NATHANIEL P. BEMIS, ET AL., APPELLANTS, VS. THE STATE, AP-PELLEE.

There is no law authorizing the Comptroller to appropriate any money collected or received by him in his official capacity, to the payment of any claim held by himself against the late Territory of Florida.

Under the provisions of the law requiring the Comptroller to collect all the debts, dues and demands of the late Territory, money collected by him for such dues must be regarded as in the Treasury of the State when he receives it, from which it cannot be drawn, but in consequence of an appropriation by law.

Appeal from judgment of the Circuit Court of the County of Leon. This cause was tried before the Hon. THOMAS BALTZELL, Judge of the Middle Circuit at the spring term, 1849, of the Circuit Court of Leon County.

The pleadings, evidence and instructions given by the Judge in the Court below, are set forth in the opinion pronounced by Ch. Jus. Douglas so fully, that it is not deemed necessary to make any other statement of the case.

*Thompson,* for Appellant.

*Hogue,* for Appellee.

DOUGLAS, Ch. J.

This suit was instituted in the Circuit Court of Leon County against Nathaniel P. Bemis, late Comptroller of Public Accounts of the State of Florida, and his sureties upon his official bond. The declaration is in the usual form, assigning as a breach of the condition of said bond, that the said Nathaniel P. Bemis did not faithfully discharge all the duties of the said office of Comptroller of Public Accounts, &c., according to the condition of said bond, in this, that he the said Nathaniel P. Bemis, by virtue of the authority vested in him by law, and in the discharge of the duties of said office, &c., on the tenth day of December, 1847, received, collected and had in his

possession on account of the Territory of Florida, the amount of five hundred and seventy-nine dollars and fifty-three cents, in cash, of the debts, dues and demands of the late Territory of Florida, which he has neglected and refused to pay into the treasury of said State of Florida, as by law he was bound to do, &c.  To this declaration the defendants pleaded, first *non est factum*.  Second, *Nil debet*.  Third, " That the plaintiff was indebted to the said defendant, Nathaniel P. Bemis in the sum of six hundred dollars for work and labour, care and diligence of the said Nathaniel, for the said plaintiff before that time done and performed and bestowed, and for compensation and commissions for divers collections and other services before that time done, performed and bestowed for the plaintiff, and at his request, and for divers warrants on the treasury of the Territory of Florida, duly issued and owned and held by the said Nathaniel, which the said plaintiff was and is bound to pay and discharge, which said warrants are numbered 158, 317, 265, 147, 257 and 377, and for money by the said plaintiff before that time had and received for the use of the defendant Nathaniel, which said sum of money so due to the defendant Nathaniel from the plaintiff is wholly unpaid, and exceeds the sum so alleged to be due and owing to said plaintiff in the said declaration mentioned, by virtue of the said condition of the said supposed writing obligatory, and which said sum of money so due and owing from said plaintiff, or so much thereof as shall be necessary, in this behalf, the said defendants are ready and willing and offer to set off and allow against the sum of money so claimed to be due and payable under the condition of the said writing obligatory, and this, &c. *Fourth,* that said Bemis did faithfully discharge all the duties of Comptroller, &c., and did faithfully account, &c., according to law ; and *Fifth,* that the said Bemis did faithfully discharge all the duties of Comptroller of Public Accounts of the State of Florida according to the condition of the said writing obligatory, and he the said Nathaniel did not neglect or refuse to pay into the treasury of the State of Florida the debts, dues and demands of the late Territory of Florida received, collected and had by him, in manner and form as the said plaintiff hath thereof complained against him, but did on the 20th day of March, one thousand eight hundred and forty-eight, and before the commencement of this suit, tender and offer to pay and did deposite in the treasury of the State the sum of five hundred and eighty

six dollars and forty-eight cents in warrants on the treasury of the Territory of Florida then outstanding and unpaid, in the hands and possession of the said Nathaniel, which said sum is more than sufficient to pay, satisfy and discharge all the demands of the State of Florida upon him the said Nathaniel for or by reason of the receipt and collection of the debts, dues and demands of the late Territory of Florida, and this, &c. To the *first* and *fourth* of these pleas, the plaintiff filed a *similiter.* The second seems not to have been noticed. To the *third,* the plaintiff replied by a general denial, and the defendant joined issue. To the fifth, the plaintiff put in a demurrer, alleging for cause, that the said defendants have not by their plea traversed or denied or attempted to put in issue any matter of fact alleged by plaintiff; that the said plea is double, in this, that the said defendants have thereby pleaded and alleged the performance of the duties of Comptroller by defendant Bemis, and also allege a tender and offer to pay as well as a deposit of Territorial warrants in payment of the demands by the State against him, the said Bemis, wherefore, &c. And the said demurrer having been argued, was sustained by the Court. After which the issues of fact were submitted to a jury, who found a verdict for plaintiff and assessed the damages at five hundred and eighty 86–100 dollars. Whereupon judgment was entered for $5000, the penalty of the bond, and for the recovery of the damages so assessed as aforesaid, the judgment to stand, &c.

It appears by a bill of exceptions which constitutes part of the record in this case, that the plaintiff offered in evidence a treasury transcript containing an account current between the said Nathaniel P. Bemis and the State of Florida, commencing as follows, to wit: "Nathaniel P. Bemis, late Comptroller, &c., in account with the State of Florida, for dues to the late Territory of Florida, collected by him in pursuance of an act of the General Assembly approved 23d July, 1845, and resolution approved 27th December, 1845," which contained two items specially referred to by one of the witnesses, viz: " specie funds rec'd S. Scarborough, fines, $15 20, and specie funds executors of T. P. Chaires, escheat, $628 72," and exhibited a balance against the said Nathaniel P. Bemis, late Comptroller, &c., of five hundred and seventy nine dollars and fifty-three cents, and that the plaintiff called Simon Towle, Esq., Comptroller

of Public Accounts, who being duly sworn, deposed that the several items in the account stated by him against the said Bemis, in the column headed "current funds" were collected in specie or what was equivalent thereto, and the several items marked "Territorial Scrip" were collected and received in auditor's warrants of the late Territorial treasury, and this so appears from the books kept by the said Bemis in the Comptroller's office, and from said Bemis' explanation in relation to said entries."

And here the plaintiff closed its case. And thereupon the defendant introduced the following paper writing purporting to be a receipt, viz : " Rec'd, Tallahassee, March 20th, 1848, of Nathaniel P. Bemis, late Comptroller, the following warrants on the Territorial Treasury, the same having been tendered in payment of the balance due the Territory on collections made by said Bemis, and refused by me, for the reason that the amount so claimed by the State was collected as current funds, No. 158, for $525, No. 317, for $9, No. 365, for $9, No. 147, for $3, No. 257, for $36 13, and 377, for $4 35.

And it was admitted by the Attorney General of the State, for the plaintiff, that the warrants were warrants of the Auditor of the late Territorial Treasury, duly and legally issued, for demands upon the said Territory of Florida ; and, further, that the same still remained in the possession of W. R. Hayward, Esq., State Treasurer. Defendants also introduced Richard T. Birchett, who, being duly sworn, proved the said Nathaniel P. Bemis was the owner and holder of said Territorial warrants, prior to his appointment to the office of Comptroller of Public Accounts. Also Hugh Archer, who, being duly sworn, deposed that Nathaniel P. Bemis was, before the date of the collections in said accounts stated, as having been made from S. Scarborough, and executors of T. P. Chaires, in possession of Territorial Treasury warrants, and which he believes the same as those described in the Treasurer's receipt, given in evidence. And here the testimony closed. And thereupon the Court charged the jury as follows, viz : " That the Comptroller has no right by law to appropriate funds collected by him in good money to the payment of an individual debt held by him on the Territory of Florida, unless it is so expressly provided by law. That, in performing the duties enjoined upon him by law, it was the duty of the Comptroller to receive scrip of

the Territory when tendered in payment; but, if payment is made in good funds, it is the duty of the Comptroller to pay the same to the State in good funds. That the rights of these parties depend upon the law as it exists, and in assuming the office of Comptroller, the defendant undertook to execute the law as it was enjoined upon him; that the Comptroller is not the judge to determine of the justice and propriety of claims for or against the State according to his own notions of right, but according to the directions of the State, whose agent he is. That, if the State Legislature had designed to allow to one of their officers the privilege contended for, they would have expressed their design in unambiguous language." And with such instruction and direction, left the case to the jury.

To which opinion of the Court, the said defendants excepted. The questions presented by the record are—

First. Whether the Court erred in sustaining the demurrer to the fifth plea above set forth ?

Second. Whether the Court erred in its instructions to the jury ?

The first question depends upon the fact, whether the said fifth plea is good, both in form and substance, or not. One cause assigned for the demurrer is that it is double, in this, that the defendants have thereby pleaded and alleged performance of the duties of Comptroller by defendant Bemis, and also allege a tender and offer to pay, as well as a deposit of Territorial warrants, in payment of the demands of the State against him, the said Bemis; and we think this cause well assigned. The allegation of performance had already been made the ground of a distinct plea, the fourth on which issue was taken; and a tender, if well made, is, of itself, a good ground of defence.

It is one of the first rules of pleading, that "pleadings must not be double, and a plea that contains within itself several distinct answers is bad." Stephen on Pl., 258, 259. 1 Chitty Pl., 592, 257, 260, 564. But a more important objection to that plea is, the nature of the tender. We are not aware of any law that makes the Treasury warrants mentioned in it a legal tender in any case.

It was held by Mr. Justice Story, in Thorndike vs. the United States, 1 Mason, that Treasury notes, issued under the act of Congress of 1814, being by their terms receivable in the payment of duties, taxes and bond debts, due the United States for the principal

and interest due thereon, are good tenders, and may be pleaded as such to such debts. But it is apprehended that they are not a good tender, and they could not be well pleaded as such to any but *such debts*. A plea of tender is not supported by proof of a tender of a promissory note due from the plaintiff to the defendant. Cary vs. Bancroft, 14 Pick., 315. These Treasury warrants were not by their terms receivable for taxes or debts due to the late Territory, which issued them. No provision has been made by any law of the State for their liquidation, and if there had, it would not make them a good tender in such a case as this, unless it specially authorized their reception in payment in such a case. The fifth plea is, therefore, bad, and the demurrer thereto properly sustained.

The next and only remaining question is, did the Court err in its instructions to the jury? And after a due and careful examination of them, and a due consideration of the arguments in relation thereto, we are of opinion that it did not. The Comptroller certainly had no right by law to appropriate the funds collected by him in good money, or, indeed, any money collected by him, to the payment of an individual debt held by him on the late Territory of Florida, unless it was so expressly provided by law; and so far from there being any express provision, the General Assembly have always hitherto carefully abstained from making any provision for the payment of such debts. How far it comports with propriety or sound moral principle, and with the character and dignity of a sovereign State, to collect the debts due to the Territory, and apply the proceeds to the payment of its own debts, without making any provision to pay the duly acknowledged and admitted indebtedness of the late Territory for services rendered it by its own public officers and other citizens, is a question for the General Assembly, and not this Court, to determine. It is to be presumed, however, that provision will be made to pay them, so soon as the state of the treasury will permit it to be done.

Until, however, that shall be done by the properly constituted authority, the Comptroller has no right to audit them, or the Treasurer to pay them; for the Constitution expressly declares that no money shall be drawn from the treasury, but in consequence of an appropriation by law. Con., art. 8, sec. 3; and the statute provides that no money shall be paid out of the treasury, except on a warrant from the Comptroller. Act July 26, 1845. Pamphlet Laws, page

19.   Thompson's Digest, page 34, No. 6.   And it is made the duty of said Comptroller to examine, state, audit and settle all accounts, claims and demands whatsoever against the State, arising under any law or resolution of the General Assembly.   Act of July 23d, 1845. Pamphlet Laws, 16.   Thompson's Digest, page 31, No. 4; and we are unable to find any statute authorizing the Comptroller to audit any other claims than those which arise under some act of the General Assembly.   Sec. 2 of the 17th Art. of the Con., (Schedule and Ordinance,) provides that "all fines, penalties and forfeitures, obligations and escheats, accruing to the Territory of Florida, shall accrue to the State of Florida ;" and Sec. 3, that "all recognizances taken, or which might be taken, before the organization of the judicial department, under this Constitution, shall remain valid, and shall pass over to and may be prosecuted in the name of the State.

And all bonds executed to the Governor of the Territory of Florida or any other officer in his official capacity, shall pass over to the Governor or other proper State authority, and to their successors in office, for the uses therein expressed, and may be sued for and recovered accordingly.   It may be remarked that this article contains no provisions for paying the above specified debts of the Territory.

It was not thought necessary by the framers of the Constitution to enjoin upon the General Assembly by a special clause, what without any such special injunction, is a great Constitutional and moral duty. It would have been a reflection upon the integrity of the General Assembly, to have inserted in that instrument a clause implying a doubt that the Legislature would discharge a duty required of them, by every principle of honor and justice.   The Act of July 23d, 1845, Thompson's Digest, page 38, No. 12—Pamphlet L. page 18, provides that "it shall be the duty of the Comptroller forthwith upon entering upon the duties of his office to cause a strict inquiry and examination to be made either by himself or such person as he may appoint in each and every County of the State, into the records of every Court of this Territory as to all fines, forfeitures, recognizances or costs, or other monies due to the Territory of Florida from any District Attorney, Clerk, Marshal, Sheriff or other officer, person, or corporation, and also to inquire and examine into all accounts, returns and reports of all officers of the Territory, or other persons or corporations indebted or accountable in anywise to the

Territory, and forthwith proceed to have such account settled and paid according to law." And a Resolution of December 27th, 18-45, Pamph. L. 157, Thompson's Digest, page 34, No. 17, directs " That the Comptroller of Public Accounts, be and he is hereby in-structed to proceed forthwith to collect all debts, dues and demands of the late Territory of Florida, for which he shall be entitled to ten per centum upon all amounts so actually collected and paid into the Treasury." These, it is believed, are all the provisions which our laws contain on the subject under consideration, and none of them authorized the Comptroller to appropriate any monies by him col-lected to the payment of his individual debts, and especially to pay a claim, which no proof as the law stands would have authorized the Comptroller to audit or the Treasurer to pay.

The monies collected by the Comptroller under the act and reso-lution above cited, were, so soon as he received them, to all intents and purposes, the monies of the State, and so far as he was concer-ned at least, in the Treasury of the State, and he so considered and treated them, for by reference to his account current, it will be per-ceived that he charged his ten per cent. for collecting them, which he is not entitled to except upon the amount so actually collected and paid into the treasury. The judgment of the Court below is there-fore affirmed with costs.

*Per curiam.*