YAZOO & MISSISSIPPI VALLEY RAILROAD COMPANY *v.* HENRY
W. McKAY.

[44 South., 780.]

CARRIERS. *Delay in carriage of freight.   Excuse.   Unexpectedly large
crops.*

A carrier's delay in the shipment of cotton, caused by its inability
to provide necessary cars for the carriage of an unprecedented
crop, is excusable if it took pains to move the cotton as promptly
as it could and the shipper knew the situation when he delivered
the shipment for transportation.

FROM the circuit court of, second district, Coahoma county.
HON. SAMUEL C. COOK, Judge.

McKay, appellee, was plaintiff in the court below; the rail-
road company, appellant, was defendant there.   From a judg-
ment in plaintiff's favor defendant appealed to the supreme
court.

The case is similar to that of *Yazoo, etc., R. R. Co.* v. *Blum,*
89 Miss., 242, 42 South., 282.   Plaintiff sued to recover
damages for defendant's failure to transport and deliver cotton
with reasonable promptness.   A demurrer to the declaration
was overruled by the trial court, and defendant then filed four
special pleas, the first of which is set forth in the opinion of
the court.   The plaintiff demurred to the special pleas, assign-
ing as causes to the first one the following grounds:   " The
plea does not aver facts that relieve defendant from liability;
nor does it aver that any of the facts arose after the delivery
of any of the cotton to defendant, nor does it aver that the plain-
tiff made or entered into any agreement with defendant, express
or implied, limiting the liability of defendant as a common car-
rier of freight for hire; nor that the cotton or any part of it, was
delivered to the consignee within a reasonable time.

The court below sustained the demurrer to each of the special pleas and, defendant declining to plead further, adjudged plaintiff entitled to recover and awarded a writ of inquiry. The parties then agreed, it being without prejudice, that the jury, if the writ were executed, would award paintiff $750, and judgment for that sum was rendered against the defendant.

*Mayes & Longstreet,* for appellant.

This case is similar to, and must be controlled by, the case of *Yazoo, etc., R. R. Co.* v. *Blum,* 89 Miss., 242, 42 South., 282. There are four special pleas in this case, being practically the same pleas as in the *Blum case,* the only difference being that the pleas in this case are much fuller, amplifying appellant's defense materially.

*J. W. Cutrer,* for appellee.

The facts alleged in appellant's plea in this case, are not identical with the allegations of the pleas filed in the case of *Yazoo, etc., R. R. Co.* v. *Blum,* 89 Miss., 242. The first special plea filed in this case, deals only with a general condition alleged to have existed in the country during certain months of the fall of the year 1904. These facts, as pleaded, are not sufficient to exculpate appellant, the sole ground alleged for escaping liability being that an unusual cotton crop was grown in 1904.

In the case of *Yazoo, etc., R. R. Co.* v. *Blum,* 88 Miss., 180, 40 South., 748, it is stated that if a railroad company accepts goods for shipment after its knowledge of its inability to transport them, it is liable for delay, unless the shipper consents to such delay; and, further, that if a carrier, having provided itself with sufficient transportation facilities to meet ordinary conditions, is met with an unusual and unexpected pressure of business, it cannot be held liable for delay, if the shipper is informed of the fact at the time of shipment, or as soon thereafter as the same may, with due diligence on the carrier's part,

be known. But the case cited is also authority that the facts above stated would constitute no excuse when the carrier, with knowledge of the facts, accepts the goods for transportation, without informing the shipper, or where it appears that the carrier was derelict in its duty to provide proper transportation facilities. See, also, 5 Am. & Eng. Enc. of Law, 160, 167.

In the subsequently decided case of *Yazoo, etc., R. R. Co.* v. *Blum,* 89 Miss., 242, 42 South., 282, the carrier offered to prove that appellee knew at the time he tendered the cotton for shipment that a large amount of cotton was being offered the appellant at the point from which appellee's cotton was shipped, and was informed that this was true all along the line. The court said that proof offered to establish these facts was excluded, and that such action on the part of the court was erroneous, because in that case the proof offered under the plea met and overcame the objections referred to in the former decision, and showed specifically that the appellant had given notice to the shipper of its inability to handle the shipment with promptness, at and before the time of the shipment.

The case made by this record is far different. The first special plea filed does not set out the number of locomotives and cars owned by the appellant; nor where said rolling stock was used; nor that the same were used upon its own lines. The plea does not set out that appellant provided itself with adequate or sufficient terminals, or other like facilities for handling the cotton which was offered to it during the year 1904, nor such as it should reasonably have anticipated would be tendered to it for shipment during that time. It was clearly the duty of appellant to have anticipated a large crop, for it knew of the great increased acreage planted in cotton, early in the season, as shown by the government reports and other bulletins issued on that subject, giving with great accuracy the exact state of the acreage; and yet the appellant wholly failed as to such duty.

Much is said in the first special plea about the alleged con-

gestion at terminals at Memphis, Clarksdale, Greenville and other places, by reason of which, compresses were unable to unload cars, but it was the duty of the railroad company, and not the compresses, to transport and unload freight, and the negligence of a third person cannot excuse the negligent misconduct of the appellant.

In addition to this, the said plea does not aver that the delay in the shipment of the cotton in controversy was caused by any of the alleged acts or facts. Nor does the plea specify what delivery of cotton was delayed by the congestion. And certainly the appellant is liable for any delays in unloading.

The plea moreover does not aver that any of the cotton was tendered to the consignees, nor that any of the consignees refused to unload the cotton, because of inability to accept the same when tendered by the appellant; nor does the plea aver that any of the cotton in controversy was delivered with promptness, and without more delay than was possible under the conditions then existing. In fact, all of the appellant's special pleas aver that there was a general delay on account of a general condition, without averring that there was a prompt delivery of any of the cotton under the conditions then existing.

There is in the first special plea a general statement of alleged extraordinary diligence in the handling of certain cars, but there is no specific averment of prompt delivery of the cotton in controversy, nor that the appellant was without fault in its transportation and delivery.

Appellant avers, in the said plea, that to require it to provide and retain an equipment of cars and engines to remove the cotton crop of 1904 and 1905, would be tantamount to a confiscation of its property; and would deprive it of property without due process of law, but the particular cotton in controversy, and the handling thereof, is not touched upon. If the pleader wishes to relieve itself of liability, it should have pleaded the specific facts applicable to the particular contro-

versy which relieved it from liability for the alleged delinquences stated in the declaration, and this it did not do.

What has been said of the first special plea is true of the others. Again, none of the pleas aver that the unusual conditions which are spoken of, arose after the property was tendered to appellant. The fact of an unusual and unexpected pressure of business will not excuse delays in transportation when the carrier, with full knowledge of the facts, accepts the goods without informing the shipper of that fact.

The appellant's pleadings do not aver that the state of things set out therein arose after the receipt of the cotton by the carrier; nor does any plea charge appellee with notice of any such alleged condition.

The pleas nowhere aver that the appellant gave appellee any information whatsoever as to anticipated delay in the delivery of his product.

Appellee was not supposed to be informed of the business of appellant, nor of its ability or inability to transport his product to market, with that promptness which the law required.

The appellant received the cotton for shipment without informing the shipper of the probability of delay, either before or at the time of its delivery to appellant, or as soon thereafter as it became known to appellant that it would not be able to deliver the cotton promptly, and within a reasonable time.

WHITFIELD, C. J., delivered the opinion of the court.

This case is controlled by the case of *Yazoo, etc., R. R. Co.* v. *Blum,* 89 Miss., 242, 42 South., 282. The pleas in this case set out substantially the same defense as set out in the case above, except that the pleas here are much fuller, amplifying the defense materially. There are four special pleas in the case. The first special plea is in the words and figures as follows:

" And for a further plea defendant says that plaintiff ought

not to have and recover in this case, for this, to-wit:   Defendant is a common carrier as set out in the second and third pleas.   Its main line extends from the city of Memphis, in the state of Tennessee, to the city of New Orleans, in the state of Louisiana, traversing the states of Louisiana and Mississippi, and together with its main and branch lines it runs through a country in which cotton is the chief agricultural produce and one of the chief commodities to it for shipment.   During the months of October, November, and December, 1904, it had full, ample, and complete equipment of cars and engines necessary to transport with promptness and dispatch all business ordinarily offered to it at that or any other season of the year, notwithstanding the fact that during the said months of October, November, and December, for the reason aforesaid, it required for transaction of the business ordinarily offered to it during said months far greater equipment of engines and cars than was needed or necessary for its business during the remainder of said year.   Prior to the opening of the cotton season in September, 1904, the estimate which had been generally placed by the cotton merchants and planters upon the crops of the said year to be produced in the United States averaged less than eleven million bales, or about the same as the crop of previous years.   The estimate placed upon it by the members of the Memphis Cotton Exchange, situated in the city of Memphis, Tenn. (where the general offices of the defendant company are located), in November, 1904, was eleven million, three hundred and fifty seven thousand, two hundred and twenty-two bales.   The defendant company had provided itself with all necessary and needed cars, engines, and equipment for the handling of cotton, which would be offered to it ordinarily and under ordinary and usual crop conditions, for shipment at various points along its line with promptness and without delay.

" By reason and on account of favorable crop conditions during the fall of 1904 the crop of cotton was unprecedented, not

only along the lines of the defendant company, but also through all the United States, and amounted to a total of thirteen million, five hundred and fifty six thousand, eight hundred and forty-one bales in the United States, as against ten million, one hundred and twenty-three thousand, six hundred and eighty-six bales for the previous year, and ten million, seven hundred and fifty-eight thousand, three hundred and twenty-six bales for the year preceding that, or the year 1902–03. Of this amount the crop for 1904–05 in the state of Mississippi was one million, seven hundred and seventy-seven thousand bales, in round numbers, as against one million, three hundred and eighty-seven thousand in 1903–04, and one million, four hundred thousand in 1902–03 against one million, three hundred and seventy-five thousand in 1901–02; while in Louisiana the crop for 1904–05 was one million, one hundred thousand as against eight hundred and twenty-four thousand bales in 1903–04, and eight hundred and eighty-four thousand bales in 1902–03 against eight hundred and eighty thousand bales in 1901–02; and the crop in Tennessee for the year 1904–05 amounted to six hundred and ninety-one thousand bales as against four hundred and fifty-one thousand for 1903–04, and five hundred and nine thousand for 1902–03, as against three hundred and fifty-nine thousand for 1901–02 — or an increase in the states above named, which are traversed by the defendant railroad company, of nine hundred and six thousand bales for the year 1904–05 over 1903–04. The defendant company could not have foreseen nor anticipated any such record-breaking crop, and, had it been able to do so, it would not have been able to provide the necessary equipment nor secure the necessary labor to have moved with greater promptness than the cotton was handled by the defendant, for the reason that throughout the cotton section traversed by the defendant company, in order to harvest the said crop, there was such a demand for labor it was difficult to secure it at any price, and, had the defendant been able to furnish a sufficient number of cars, it would have experi-

enced and did experience difficulty in securing labor to load the cotton upon the cars. In addition to this, in order to purchase equipment, because of the great era of prosperity than existing throughout the United States, Canada, and Mexico, and especially on account of the great amount of freight then being offered to the various railroads in the United States, particularly to the railroads of the Southern States, and on account of the great demand for freight cars, which demand had existed for some years, and had resulted with placing with various manufacturers of freight cars more orders than could be filled without booking ahead, defendant would have been unable to secure more cars than it did secure without having had at least a year or more notice than the enormous cotton crop of 1904–05 would be delivered it for shipment along its line of road.

" Defendant says that it did handle the said cotton delivered it by plaintiff and by all other shippers along its lines without discrimination against any shipper or any shipping point; that it provided a greater number of cars for the movement of the same than it had provided in any previous year to that, and, notwithstanding this fact, because of the said unusual heavy crop and the great demands made upon it during the months of October, November, and December, 1904, it was unable to handle and move the cotton tendered by plaintiff herein for shipment with greater dispatch than it did handle the same. Defendant avers that during the month of October, 1904, it had on its system per day one thousand, three hundred and sixty-eight foreign cars — that is, cars belonging to other railway systems than the Yazoo & Mississippi Valley system (not including cars of the Illinois Central) — as against one thousand, one hundred and eighty-four foreign cars in the year 1903, and one thousand, one hundred and thirty-nine for the same month in 1902; that during the month of November, 1904, it had foreign cars on its road averaging per day two thousand, three hundred and seventy-one, as against one thousand, three

hundred and thirty for the same month of 1903, and one thousand, one hundred and eighty-nine for the same month in 1902; that during the month of December, 1904, it averaged two thousand, nine hundred and nineteen foreign cars per day, as against one thousand, six hundred and twenty-three in the same month of 1903, and one thousand, nine hundred and ninety-eight in same month of 1902, or an increase in the year 1904 over the foreign equipment upon its system for the same months of 1903 of sixty-one per cent; that it had upon its system an average per day of private line cars during the months of October, November, and December, 1904, an increase of fifty-five per cent over the number of private line cars on its lines during the same months of 1903; that the number of Illinois Central cars upon its line for the months of October, November, and December, 1904, exceeded the number on hand during the months of October, November, and December, 1903, by thirty-three per cent, and exceeded the number during the same months of 1902 by seventy per cent; that to secure the use of private line, foreign, and Illinois Central cars defendant was compelled to pay large sums of money for the same; and that it did secure for its use as aforesaid all of the available equipment which it had or could obtain.

" Defendant, at the time this cotton was delivered and was being delivered for shipment, took unusual and extraordinary steps to handle the same promptly and to transport it to market; that it rushed back from destination cars when emptied, without waiting for them to be reloaded, so that the number of empty cars handled by the defendant during the said months exceeded the number of empty cars handled by it any previous year by a large percentage. The increase in the number of empty mileage for the month of November, 1904, over 1903, was sixty-four per cent, the increase of December, 1904, over 1903, was one hundred and eighty-three per cent, and that of January, 1905, over 1904, was one hundred and sixty-one per cent; that during the said months its increase in loaded car

mileage in 1904 over 1903 was twenty-seven per cent, December, 1904, over 1903, was forty-five per cent, and January, 1905, over 1904, was fifty per cent; that it increased during the said time the tonnage of its trains, and made every effort within its power to promptly move without discrimination all of the cotton tendered it for shipment; and that any delay which occurred on its lines, and especially in the transportation of cotton tendered by plaintiff, was due to the reason aforesaid. Defendant avers that the total tonnage of cotton shipped over its lines for the year ending June 30, 1904, amounted to two hundred and sixty-three thousand, six hundred and thirty-four tons; whereas, on account of said extraordinary crop of 1904–05, the total number of tons of cotton handled over its lines for the year ending June 30, 1905, amounted to three hundred and eighty-one thousand, four hundred and five tons — an increase of one hundred and seventeen thousand, seven hundred and seventy-one tons, or more than forty-four and five tenths per cent for the year 1904–05 over that of 1903–04.

"Defendant further avers that the section of country traversed by its lines had rapidly increased in population and business, and that all departments of its business had increased, so that in the year 1904–05 it had tendered to it a greater amount of traffic of all kinds and a greater amount of traffic than ever before in its history; that along its lines cities and towns had increased in population, and consequently the demands upon the defendant had largely increased, and this defendant, though with the exercise of all due and reasonable diligence in the extension of its terminals, construction of sidetracks, depots, and platforms, and in the purchase of equipment, and the employment of help and labor to keep pace with the growing demands upon it, by the growth of the country and its traffic, was unable to meet the demands of traffic in the cotton season of 1904–05, to handle the same with more expedition than it did, because on account of the unusual and unexpected cotton crop hereinbefore referred to. In the cotton season of 1904,

and especially in the months of October, November, and December, 1904, and in January, 1905, its terminals at Memphis, Clarksdale, Greenville, Vicksburg, Jackson, Greenwood, Grenada, Natchez, and New Orleans were congested with cotton, due to the inability of the compresses at the several points named to unload the same, and to the congestion prevailing in said compresses; and thus a large amount of the equipment of the defendant was tied up, and the delivery of cotton impeded and delayed, and the use of this large amount of equipment at this unusually busy season was withdrawn from the defendant, and without its negligence or default.

"Defendant avers that in the city of Memphis, the destination of the cotton sued on in this case, the warehouses of the cotton merchants, and especially of the consignees of the cotton, were early in the fall of 1904, filled to overflowing, and that large amounts of cotton had to be piled in the streets of the city of Memphis; that this congestion of the warehouses was such that the defendant was unable to make prompt delivery to the said warehouses and to the consignees, because they had no place to store it, and, in addition to this, the cotton piled upon the streets of the city of Memphis so impeded the movement of drays, wagons, etc., used in the delivery of the same, that a much longer time was necessarily consumed in the delivery of the cotton to the consignees than ever before, all of which was without any fault or negligence upon the part of the defendant, its agents, servants, or employes, and from causes unavoidable. Defendant avers that it used all the means in its power to make delivery of cotton promptly to the consignee; that it increased its means of delivery a large per cent, and paid high and exorbitant prices for labor to expedite the movement of the cotton offered to it for transportation, and especially of the cotton shipped by the plaintiff herein, and the subject of this suit.

"Defendant avers that its inability to handle said cotton crop and to furnish more cars than it did furnish was well known to

the plaintiff at the time the cotton was delivered for shipment; that the plaintiff well knew the great amount of cotton which was being offered it for shipment along its lines; that the plaintiff knew the amount tendered was far in excess of that ever offered before, and that the crop of 1904, grown along the lines of the defendant company, far exceeded that of any previous year, and that its inability to handle the cotton was due to the extraordinary press of business, all of which was brought to the attention of the plaintiff, and was well known by it, when said cotton was delivered and received by the defendant company.

" Defendant avers that to require it to provide and retain an equipment of engines and cars to have moved the cotton crop of 1904–05, and that offered along its lines during the months of October, November, and December, 1904, would require of it to purchase and keep an equipment amounting to more than one-third the equipment required, needed, or necessary to have moved the freight under ordinary conditions during any months of any season prior to the said date. It would have made necessary the investment of a large sum of money in engines, cars, and other equipment for use in moving said extraordinary and unusual crop, and would have left upon its hands, without use and without any due return thereon, the said equipment, after said press of business was passed. Defendant avers that to be required to spend such sums of money, upon which it would have received no due returns during the said year, and no return whatever thereafter, unless such unusual and extraordinary press of business, which had never before occurred, should return at some future time, would deprive the defendant of its property without due process of law, and would amount to a confiscation of the same, contrary to the Constitution of the United States, and particularly to the fourteenth amendment thereof. And this the defendant is ready to verify."

We have set out this lengthy plea in full, because an inspec-

tion of it will best show the ground of disposition of the case. Substantially it will be seen that the plea avers that there was an extraordinary, unprecedented cotton crop that season — one not to be anticipated; that, if it had been anticipated, appellant could not have provided the necessary cars under at least one year's notice; that it had during the month of October, 1904, one thousand, three hundred and sixty-eight cars in service, as against one thousand, one hundred and eighty-four for the same month in 1903, belonging to other railway systems than the Yazoo & Mississippi Valley system, not including cars of the Illinois Central; that during the month of November, 1904, it had two thousand, three hundred and seventy-one such cars, as against one thousand, three hundred and thirty for the same months in 1903; that during the month of December, 1904, it averaged two thousand, nine hundred and nineteen such cars every day, as against one thousand, six hundred and twenty-five in the same month in 1903, etc.; that it took unusual and extraordinary care and pains to handle the cotton promptly, and to transport it to market; that it rushed back from destination cars when empty, without waiting for them to be reloaded; that the increase in the number of empty mileage for November, 1904, over 1903, was sixty-four per cent, for December, 1904, over 1903, one hundred and eighty-three per cent, and for January, 1905, over 1904, one hundred and sixty-one per cent, etc.; that there had been wonderful increase in population and business in the year 1904–05, and that a greater amount of traffic of all kinds than ever before in its history had been tendered to appellant during 1904; and, finally, the plea expressly avers that "its inability to handle said cotton crop, and to furnish more cars than it did furnish, was well known to the plaintiff at the time the cotton was delivered for shipment, that the plaintiff well knew the great amount of cotton which was being offered it for shipment along its lines, that the plaintiff knew the amount tendered was far in excess of that ever offered before, and that the crop of 1904,

grown along the lines of the defendant company, far exceeded that of any previous year, and that its inability to handle the cotton was due to the extraordinary press of business, all of which was brought to the attention of the plaintiff, and was well known by it, when said cotton was delivered and received by the defendant company." It must be obvious, from a reading of the opinion of this court above referred to, that this plea brings this case squarely within the principle of that decision.

Wherefore the judgment is reversed, and the demurrer to this first special plea is overruled, and the cause remanded, to be proceeded with in accordance with this opinion.