FLORIDA EAST COAST RAILWAY COMPANY, A CORPORATION, *Plaintiff in Error,* v. THOMAS J. PETERS, *Defendant in Error.*

Opinion Filed Nov. 21, 1916.

1. In order to maintain an action against a carrier for the recovery of damages occasioned by negligence in the transportation or delivery of goods, either *ex contractu* or *ex delicto,* the plaintiff does not have to be the absolute owner of the goods. If the plaintiff has a special interest therein and his legal rights have been invaded, that would entitle him to maintain the action.

2. Where goods are entrusted to a carrier for transportation and delivery the carrier thereby has notice of the interest of both the consignor and the consignee, and if either suffers an injury through the negligent delay in the transportation or delivery of the goods the person so suffering such injury may bring an action against the carrier to obtain redress for such injury.

3. As a general rule, the consignee is *prima facie* entitled to bring an action against a carrier for the loss of or injury to goods or for negligent delay in their transportation or delivery, since it is a presumption of law that on the delivery of goods to a carrier the title thereto vests in the consignee, and when the consignee is the party who has been damaged, with which damage the consignor has no especial concern, the consignee is the proper party plaintiff, especially in an action *ex delicto*.

4. The common law rule was that an action for a tort must in general be brought in the name of the person whose legal right has been infringed. Where the consignee has suffered special damages from the negligent delay in the transportation or delivery of goods by a carrier the consignee is the proper party plaintiff in an action *ex delicto*, being "the real party in interest" within the intent and meaning of Section 1365 of the General Statutes of 1906, providing that "Any civil action at law may be maintained in the name of the real party in interest."

5. The liabilities of a carrier depend not only on its contract, but also on obligations imposed by law, and the law imposes the duty upon a carrier to transport and deliver to the consignee within a reasonable time goods which have been entrusted to it.

6. Any pleading, whether at law or in equity, is to be most strictly construed against the pleader thereof, and this principle applies with especial force to a plea which is in the nature of a confession and avoidance, and where such a plea has on the face of it two intendments, it must be construed most strongly against the party who pleads it.

7. A plea in bar of the plaintiff's action must be certain to a common intent; it must be direct and positive in the facts set forth, and must state them with necessary certainty, and a plea which professes to be to the entire declaration, but omits to answer a material part thereof, is bad on demurrer.

8. Every plea must be simple, entire, connected and confined to a single point; a plea which contains more than one independent fact, or set of facts, either of which alone is a sufficient answer to the declaration, is bad for duplicity, whether the defence is in bar, or in abatement, or in both.

9. In an action on the case, since the adoption by this court of Rules 71 and 72 of the Rules of Circuit Court in Common Law Actions, the defendant has the right to file the plea of not guilty together with special pleas in the nature of confession and avoidance, and, if he would avail himself of the benefit of certain matters of defense, he must file such special pleas.

10. A plea in justification or excuse admits the facts alleged by the plaintiff, but in effect denies that the plaintiff had at any time a good cause of action, either because the conduct of the defendant is justified in law, or because he is excused from liability in the particular case through some act or conduct of the plaintiff.

11. All matters in confession and avoidance must be pleaded specially, the plea must confess the facts pleaded, and the plea must avoid, and the avoidance must be pleaded co-extensive with the confession, and must be an answer to the whole of what is adversely alleged.

12. Where a plea in the nature of confession and avoidance interposed to an entire declaration, consisting of a number of counts, is found to answer only some of such counts, it is demurrable.

13. When an emergency arises and a carrier unexpectedly has more business than it can accommodate, and it receives goods without notice to the shipper of the probable delay, and fails to obtain his assent, express or implied, to the delay, it is

bound to transport the goods within a reasonable time, notwithtsanding the emergency.

14. A contract between a carrier and shipper for the transportation of goods, containing the following stipulation: Claims for loss or damage must be made in writing to this company within ten days after arrival of the goods at their place of ultimate destination in case of fruit, vegetables, and other perishable articles, and within thirty days after arrival at ultimate destination in case of other freight, and unless claims are so made this company shall not be liable, even if valid and enforceable, relates only to claims for the loss of or injury to goods, and has no applicability to an action for special damages occasioned by negligent delay in the transportation of goods.

15. In an action by the consignee against a carrier for the recovery of damages occasioned by the negligent delay of the carrier in the transportation and delivery to the consignee of several shipments of crate material for the use of the consignee in the shipment of his crop of tomatoes, it is incumbent upon the plaintiff to prove by competent evidence the amount of damages which he has suffered as a proximate result of such negligent delay.

16. This court has committed itself to the doctrine that the rules governing the assessment of damages are the same in tort as in contract, except where a tort is committed under such circumstances as to warrant the allowance of exemplary damages.

17. In an action against a carrier for the recovery of damages occasioned by the negligent delay in the transportation of goods, whether brought by the consignor or consignee, only such damages may be recovered as were contemplated or might reasonably be supposed to have entered into the contemplation of the parties to the contract of carriage. In order to charge the carrier with any special damages, it is incumbent upon the plaintiff to show that at the time of the shipment of the goods the carrier had notice or knowledge of such special facts and circumstances as to require expedi-

tion in the transportation of the goods and that special damages would ensue by reason of negligent delay.

18. In an action by a consignee against a carrier for the recovery of damages occasioned by negligent delay in the transportation of goods, it may not constitute reversible error to permit the plaintiff to introduce documentary evidence, consisting of letters and telegrams. which had passed between the plaintiff and the defendant, even if this evidence was incomplete in itself, and insufficient to show knowledge or notice to the defendant of any special damages which the plaintiff might sustain by reason of delay in the transportation, since such evidence tended to throw light upon the preliminary negotiations taking place between the plaintiff and the defendant and to explain the subsequent notice which was given to the defendant. This may likewise be true as to testimony of conversations between the plaintiff and the defendant.

19. It is doubtless true that common carriers are supposed to take notice of such natural events as are familiar to ordinary people. They will be held to a knowledge of seedtime and harvest, and of the general customs relating thereto in the territory where they do business. Even so, knowledge by a carrier of the fact that a shipper on its line has about 400 acres planted in tomatoes would not carry with it the additional knowledge when such tomatoes would be ready for the shipment thereof to begin or when the shipper would need crates, the number thereof that he would need or that a few days' delay in the transportation thereof would result in special damages to such shipper.

20. In an action by a consignee aganist a carrier for the recovery of damages occasioned by negligent delay in the transportation of crate material to be used by the consignee in the shipment of tomatoes, it is error to permit the plaintiff to testify, over the objection of the defendant, as to what amount of fertilizing material he had used in making his crop and of what such material consisted, such testimony not being pertinent to the issues.

21. Where losses and injuries are not necessary or a usual and ordinary but a proximate though unusual result of actionable

negligence, such losses and injuries may be compensated for by the recovery of special damages. But the negligent party cannot lawfully be made to respond in damages for losses that do not usually result from or could not ordinarily have been foreseen as a proximate result of a particular negligence, unless it be shown that there was knowledge or notice on the part of the negligent person that such losses would or might follow as a proximate result of a particular negligence.

22. In action by a consignee against a carrier for the recovery of damages occasioned by negligent delay in the transportation of crate material, unless the carrier had at or before the receipt of the crates for transportation knowledge or notice of the particular special damages that would result from an unreasonable delay in the transportation, such special damages are not recoverable. And if several elements of unusual or special damages would proximately result from the negligence, there must have been notice or knowledge as to each such element of damages as a probable result of the stated negligence before liability for such special damages arises in law. Where notice was given to the carrier of probable special damages as a result of unreasonable delay in transporting crate material after some shipments of such crate material had already been delivered to the carrier, such notice cannot be held to relate back, and the carrier would be liable only for special damages as for shipments received after such notice was given to it.

23. In an action by a consignee against a carrier for the recovery of damages occasioned by negligent delay in the transportation of crate material, it is harmful error to charge that special damages may be recovered as to which no notice was given though such charge included a reference to special damages arising from the receipt of other crates after the notice was given. And this error is not rendered harmless by a subsequent charge that special damages cannot be recovered where it is not shown that notice was given of the anticipated special damages.

Writ of Error to Circuit Court, Dade County; H. P. Branning, Judge.

Judgment reversed.

### Statement.

Thomas J. Peters instituted an action at law in tort against the Florida East Coast Railway Company, a corporation, for damages alleged to have been sustained by the plaintiff by reason of the negligent delay by the defendant in the transportation of thirty carloads of crate material over the line of the defendant from Jacksonville to Peters Siding, on the line of the defendant, within the State of Florida, which had been shipped to the plaintiff as consignee. As is stated in the brief filed by the defendant, which is concurred in by the plaintiff: "The second amended declaration (Tr. pp. 2 to 90), being the one on which the case was tried, is in thirty-one counts. The first thirty counts are each drawn with reference to a single shipment, each of the thirty shipments being declared on in like manner in the first thirty counts. The last, or thirty-first count, is drawn to include all of the shipments. The scope of the declaration may be determined, therefore, by an examination of the first and thirty-first counts."

The first count of this declaration is as follows:

"Thomas J. Peters, plaintiff, by his attorneys sues the Florida East Coast Railway Company, a corporation under the laws of Florida defendant, in this the first count of his second amended declaration, for that, whereas; the defendant was from to-wit, November 1st, 1910, until this date and at all intervening times, and is now a common carrier of goods for hire, operating a line of rail-

road from to-wit Knights Key, Monroe County, Florida,
to to-wit Jacksonville, Duval County, Florida, and the
plaintiff was at the times above set forth a farmer resid-
ing near Peters Station, a station on the main line of the
defendant's railroad in Dade County, Florida, and was
then and there engaged in the business of growing early
vegetables for market.   And in the course of said busi-
ness during the vegetable season, beginning about No-
vember first, 1910, and ending about May third, 1911,
plaintiff had planted and cultivated in tomatoes a large
number, to-wit about four hundred acres of land near
Peters Station, of which the defendant had notice; that
in anticipation of a large crop of tomatoes which was
indicated and expected, and of which the defendant had
notice, the plaintiff contracted with the Cummer Lumber
Company, a corporation doing business at Jacksonville,
Florida, by and through its duly authorized agent, to-wit,
the Drake Produce Company of Miami, Florida, to sup-
ply the plaintiff with carrier crates to be shipped on order
of the plaintiff, which said crates were to be specially
prepared for the plaintiff by the said Cummer Lumber
Company aforesaid with the name, brand and address of
the plaintiff stamped on each end of the said carrier
crates, and which were to be furnished and shipped as
directed by the plaintiff; that in accordance with said
agreement the plaintiff purchased from the said Cummer
Lumber Company, to-wit seventy-five thousand (75,000)
carrier crates for tomatoes especially prepared as afore-
said, to be shipped by the said Cummer Lumber Company
from Jacksonville, Florida, to the plaintiff at Peters Sta-
tion, Florida, aforesaid, in accordance with shipping
directions of the plaintiff; that the plaintiff had on hand
enough carrier crates in which to pack and ship early
shipment of tomatoes, which might become ripe and

ready for shipment before the carrier crates ordered from the said Cummer Lumber Company should arrive, if transported by the defendant with reasonable speed and diligence; that said carrier crates were loaded in certain cars for shipment twenty-five hundred (2500) of the said carrier crates being loaded in each car; that the defendant had knowledge that when tomatoes become ripe and ready for packing and shipping they must be packed and shipped immediately in order to prevent them from becoming overripe and thus reaching the market in a deteriorated or unmarketable condition; that defendant had notice that the plaintiff would during the busy season require a large number of carrier crates, to-wit five or six thousand of the same each day, in which to pack such tomatoes as had ripened and were ready for shipment on that day; that defendant had notice that such carrier crates as were offered to it for transportation consigned to the plaintiff were to be used for the purpose of packing and shipping the tomatoes grown on the plaintiff's farm near Peters Station aforesaid; that the defendant had notice that a failure to deliver them promptly would result in the loss of a large number of tomatoes; that on, to-wit the twenty-eighth day of February, 1911, the Cummer Lumber Company aforesaid at Jacksonville, Florida, delivered to the defendant, to-wit twenty-five hundred (2,500) carrier crates, consigned to the plaintiff at Peters Siding, Florida, and the defendant then and there being a common carrier of goods for hire, it became and was its duty to carry and transport said car containing said crates to the plaintiff at Peters Siding, Florida, with reasonable speed and diligence, and the defendant then and there promised and agreed to transport said goods over its line by the shortest and most available route, and deliver the same to the plaintiff at the point of destination with rea-

sonable speed and diligence; that the defendant had notice of the facts as aforesaid; that all conditions precedent necessary to be performed by the plaintiff had been performed.

"Yet the defendant, notwithstanding the premises, failed and neglected to transport the said goods with reasonable speed and dispatch, but on the contrary thereof did greatly delay the transportation and delivery of the same over its said line, so that by reason of said great delay in the transportation and delivery of said goods, and by reason of the carelessness and negligence of the defendant, the said twenty-five hundred (2,500) carrier crates did not arrive at their destination and were not delivered to the plaintiff until, to-wit March 6, 1911; that in the meantime the plaintiff had exhausted the supply of carrier crates on hand, which would have been sufficient to last until the said twenty-five hundred (2,500) crates had arrived, if the same had been transported with reasonable speed, diligence and dispatch, and by reason of the fact that the said carrier crates on hand had become exhausted, and by reason of the fact that the said twenty-five hundred (2500) carrier crates did not arrive within a reasonable time after the delivery to the defendant, the plaintiff was unable to pick, pack and ship the tomatoes grown as aforesaid, as the same ripened and became ready for shipment; and by reason of the facts aforesaid sufficient tomatoes to fill, to-wit twenty-five hundred (2,500) carrier crates became too ripe for shipment, so that the plaintiff was forced to allow them to become over-ripe and rot in his said field; that the said tomatoes would have been, if properly packed and shipped at the proper time, of a net value to the plaintiff of to-wit One Dollar and Thirty-five Cents ($1.35) per crate, but by reason of the negligence of the defendant, the said tomatoes were allowed to rot and

spoil in the field of the plaintiff and were a total loss to the plaintiff."

The thirty-first count of such declaration is as follows:

"31.  And the plaintiff by his attorneys sues the defendant in this the thirty-first count of his second amended declaration for that whereas; the defendant was from to-wit November 1st, 1910, until this date and at all intervening times and now is a common carrier of goods for hire operating a line of railroad from to-wit Knights Key, Monroe County, Florida, to to-wit Jacksonville, Duval County, Florida, and the plaintiff was at the times above set forth a farmer residing near Peters Station, a station on the main line of defendant's railroad in Dade County, Florida, and was then and there engaged in the business of growing early vegetables for market.  And in the course of said business during the vegetable season beginning about November first, 1910, and ending about May third, 1911, the plaintiff had planted and cultivated in tomatoes a large number, to-wit about four hundred (400) acres of land near Peters Station; that in anticipation of a large crop of tomatoes the plaintiff had contracted with the Cummer Lumber Company, a corporation doing business at Jacksonville, Florida, to supply the plaintiff with carrier crates to be shipped on order of the plaintiff, and which were to be furnished and shipped as directed by the plaintiff; that in accordance with said agreement, the plaintiff purchased from the said Cummer Lumber Company, to-wit seventy-five thousand (75,000) carrier crates for tomatoes, to be shipped by the said Cummer Lumber Company from Jacksonville, Florida, to the plaintiff at Peters Station, Florida, aforesaid, in accordance with shipping directions of the plaintiff; that the plaintiff had on hand necessary carrier crates in which to pack and ship

early shipment of tomatoes which might ripen and become ready for shipment before the carrier crates ordered from the Cummer Lumber Company as aforesaid, should arrive, if transported by the defendant with reasonable speed and diligence; that said carrier crates were loaded in certain cars for shipment as hereinafter set forth, twenty-five hundred (2,500) of said carrier crates being loaded in each car; that defendant had notice that plaintiff would during the busy season require a large number of carrier crates in which to pack such tomatoes as had ripened and ready for shipment on that day, and that such busy season extended from about the middle of March, 1911, until about the middle of April, 1911; that defendant had notice that such carrier crates as were offered to it for transportation as hereinafter set forth, consigned to the plaintiff, were to be used for the purpose of packing and shipping the tomatoes grown on the plaintiff's farm near Peters Station aforesaid; that the defendant had notice that a failure to deliver such carrier crates promptly would result in the loss of a large number of tomatoes by reason of the fact that such tomatoes would become over-ripe and unfit for shipment; that in anticipation of the large crop of tomatoes indicated and expected as aforesaid, and in order to carefully, properly and promptly pick, pack and ship the same, the plaintiff had assembled at Peters Station during the vegetable season aforesaid a large force of men and a large number of teams, and the defendant knew that it was necessary to keep this large force of men and teams at said Peters Station in order to pack and ship such tomatoes as might become ripe, promptly after they became ready for shipment, that if the plaintiff should not have sufficient carrier crates in which to pack such tomatoes as became ripe day by day. it would cause the force of men and teams

aforesaid to become idle and disorganized, and many of such men and teams were likely to be withdrawn from the service of the plaintiff; that the plaintiff had applied to the defendant to increase the length of the said track at Peters Station aforesaid so as to accommodate a large number of cars thereon and thus aid in expeditiously receiving material and shipping such tomatoes as might be packed and offered for shipment; that defendant had notice that if the teams and men assembled by the plaintiff should be withdrawn because of the lack of carrier crates in which to pack tomatoes and thus keep such men and teams busily engaged, it would be difficult if not impossible to reassemble such men and teams when carrier crates might become available in which to pick, pack and ship tomatoes, and thus many tomatoes ripe and ready for shipment might become over-ripe and unfit for shipment because there were no men and teams sufficient to handle them as fast as they became ripe and ready for shipment.

"Plaintiff further says that tomato plants or vines are of such a nature that if the tomatoes which become ripe thereon, and ready to be picked and shipped, are not at once upon their becoming ripe picked from the vines, that the vitality and productiveness of the vine is thereby affected so that the productiveness of such plants are materially decreased, not only in the number of the tomatoes produced and the time that such plants will keep on bearing or producing tomatoes, but that the size and quantity of the fruit produced will be greatly depreciated.

"And the plaintiff says that on to-wit the twenty-sixth day of February, 1911, the Cummer Lumber Company aforesaid at Jacksonville, Florida, delivered to the defendant to-wit twenty-five hundred (2,500) carrier crates for tomatoes, the defendant having notice that car con-

tained carrier crates, loaded in car number, to-wit 32769, car initial A. C. L., consigned to the plaintiff at Peters Siding, Florida, and the plaintiff says that on other dates as hereinafter set forth, the said Cummer Lumber Company likewise delivered to the defendant at Jacksonville, Florida, to-wit twenty-nine (29) other cars, each car containing to-wit twenty-five hundred (2,500) carrier crates for tomatoes, and the defendant having notice that said cars contained carrier crates, each car consigned to the plaintiff at Peters Siding, Florida, the dates on which said cars were delivered to the defendant, and the description of the said cars being as follows:    That is to say, on March 1, 1911, car numbered to-wit 28046, car initial A. C. L.; on to-wit March 3, 1911, car numbered to-wit 11741, car initial L. & N.; on to-wit March 4, 1911, car numbered to-wit 29702, car initial A. C. L.; on to-wit March 8, 1911, car numbered to-wit 36056, car initial A. C. L.; on to-wit March 8, 1911, car numbered to-wit 30178, car initial A. C. L.; on to-wit March 11, 1911, car numbered to-wit 35947, car initial A. C. L.; on to-wit March 13, 1911, car numbered to-wit 34128, car initial A. C. L.; on to-wit March 14, 1911, car numbered to-wit 35419, car initial A. C. L..; on to-wit March 15, 1911, car numbered to-wit 34400, car initial A. C. L.; on to-wit March 16, 1911, car numbered to-wit 34705, car initial A. C. L.; on to-wit March 16, 1911, car numbered to-wit 34559, car initial A. C. L.; on to-wit March 16, 1911, car numbered to-wit 35131, car initial A. C. L.; on to-wit March 17, 1911, car numbered to-wit 35329, car initial A. C. L.; on to-wit March 17, 1911, car numbered to-wit 34696, car initial A. C. L.; on to-wit March 18, 1911, car numbered to-wit 34531, car initial A. C. L.; on to-wit March 20, 1911, car numbered to-wit 35218, car initial A. C. L.; on to-wit March 20, 1911, car numbered to-wit

29114, car initial A. C. L.; on to-wit March 21, 1911, car numbered to-wit 36179, car initial A. C. L.; on to-wit March 21, 1911, car numbered to-wit 35783, car initial A. C. L.; on to-wit March 22, 1911, car numbered to-wit 35938, car initial A. C. L.; on to-wit March 24, 1911, car numbered to-wit 29068, car initial A. C. L.; on to-wit March 23, 1911, car numbered to-wit 35499, car initial A. C. L.; on to-wit March 23, 1911, car numbered to-wit 35,938, car initial A. C. L.; on to-wit March 24, 1911, car numbered to-wit 35312, car initial A. C. L.; on to-wit March 24, 1911, car numbered to-wit 35344, car initial A. C. L.; on to-wit March 25, 1911, car numbered to-wit 34604, car initial A. C. L.; on to-wit March 25, 1911, car numbered to-wit 31849, car initial A. C. L.; on to-wit March 27, 1911, car numbered to-wit 29539, car initial A. C. L.; on to-wit March 27, 1911, car numbered to-wit 32337, car initial A. C. L., to-wit thirty (30) cars in all being delivered to the defendant at the times and place aforesaid, containing in all to-wit seventy-five thousand (75,000) carrier crates for tomatoes; each of said cars being shipped by the Cummer Lumber Company, as aforesaid, and consigned to the plaintiff as aforesaid at Peters Siding, Florida; and the defendant then and there being a common carrier of goods for hire, it became and was its duty to carry and transport said cars containing said carrier crates to plaintiff at Peters Siding, Florida, with reasonable speed and diligence, and the defendant then and there promised and agreed to transport said goods over its said line by the shortest and most available route and deliver the same to the plaintiff at the point of destination with reasonable speed and diligence. And the plaintiff says that the freight on each and every of the above mentioned cars was prepaid to the defendant; that the defendant had notice of the facts, circumstances and

conditions as aforesaid; that all conditions precedent necessary to be performed by or on behalf of the plaintiff had been performed.

"Yet the defendant notwithstanding the premises failed and neglected to transport the said goods contained in said cars as aforesaid with reasonable speed and diligence, but on the contrary thereof did greatly delay the transportation of the same over its line of railroad and the delivery of the same to the plaintiff, so that by reason of the said great delay in the transportation and delivery of said goods, and by reason of the carelessness and negligence of the defendant, each and every of the aforementioned cars severally were unreasonably delayed in transportation so that the same were not delivered to the plaintiff at Peters Siding, Florida, until the following times, that is to say: Car shipped on to-wit February 28, 1911, was not delivered until to-wit March 6, 1911; car delivered to the defendant March 1, 1911, was not delivered to the plaintiff at destination until to-wit March 6, 1911; car delivered to the defendant for transportation on to-wit March 3, 1911, was not delivered to the plaintiff at its destination until to-wit March 8, 1911; car delivered to the defendant for transportation on to-wit March 4, 1911, was not delivered to the plaintiff at its destination until to-wit March 9, 1911; cars delivered to the defendant for transportation on to-wit March 8, 1911, one was delivered to the plaintiff at destination on to-wit March 12, 1911, and the other was delivered to the plaintiff at destination on to-wit March 18, 1911; car delivered to the defendant for transportation on to-wit March 11, 1911, was not delivered to the plaintiff at destination until to-wit March 21, 1911; car delivered to the defendant for transportation on to-wit March 13, 1911, was not delivered to the plaintiff at destination until to-

wit March 20, 1911; car delivered to defendant for transportation on to-wit March 14, 1911, was not delivered to the plaintiff at destination until to-wit March 22, 1911; car delivered to defendant for transportation on to-wit March 15, 1911, was not delivered to the plaintiff at destination to-wit March 30, 1911; three cars delivered to the defendant on to-wit March 16, 1911, were not delivered to the plaintiff at destination until to-wit March 30, 1911; two cars delivered to the defendant for transportation on to-wit March 17, 1911, one car delivered to the plaintiff at destination on to-wit March 30, 1911, and the other on to-wit April 2, 1911; car delivered to the defendant for transportation on to-wit March 18, 1911, was not delivered to the plaintiff at destination until to-wit April 13, 1911; two cars delivered to the defendant for transportation on to-wit March 20, 1911, one was delivered to the plaintiff at destination on to-wit March 30, 1911, and the other on to-wit April 2, 1911; two cars delivered to the defendant for transportation on to-wit March 21, 1911, one was delivered to the plaintiff at destination on to-wit March 31, 1911, and the other on to-wit April 13, 1911; two cars delivered to the defendant for transportation on to-wit March 22, 1911, one was delivered to the plaintiff at destination on to-wit April 13, 1911, and the other on to-wit April 17, 1911; two cars delivered to the defendant for transportation on to-wit March 23, 1911, were delivered to the plaintiff at destination on to-wit April 2, 1911; two cars delivered to the defendant for transportation on to-wit March 24, 1911, were delivered to the plaintiff at destination on to-wit April 19, 1911; two cars delivered to the defendant for transportation on to-wit March 25, 1911, one was delivered to the plaintiff at destination on to-wit April 3, 1911, and the other on to-wit April 17, 1911; two cars delivered

to the defendant for transportation on to-wit March 27, 1911, were delivered to the defendant at destination on to-wit April 6, 1911.

"That by reason of the delay aforesaid and by reason of the negligence and carelessness of the defendant aforesaid, on or about the fifteenth day of March, A. D. 1911, plaintiff's supply of carrier crates, including the crates on hand before the season commenced and also the several carloads of crates which had been delivered before that time, had become exhausted; that thereafter from about to-wit the fifteenth day of March, 1911, until to-wit the thirtieth day of March, 1911, the defendant delivered to the plaintiff only to-wit four carloads of carrier crates, aggregating in all to-wit ten thousand (10,000) carrier crates; that no two of said cars were delivered to the plaintiff on the same day; that the carrier crates contained in one carload, consisting of about twenty-five hundred (2,500) crates, was only sufficient to keep the force of men and teams assembled by the plaintiff at work preparing said tomatoes for shipment for about four hours for each carload; that during said long space of time, to-wit from March fifteenth, 1911, until to-wit March thirtieth, 1911, the plaintiff and the force of men and teams assembled by him were forced to remain idle except for about four hours a day on four different days; that during said time a large number of tomatoes, towit enough to fill about seventy-three thousand (73,000) crates, became over-ripe and rotted in the field of the plaintiff, because the plaintiff had no carrier crates in which to pack and ship the same; that because of the fact that the plaintiff had no carrier crates in which to pack and ship tomatoes, the plaintiff was not able during said period of time, from to-wit March fifteenth until to-wit March thirtieth, 1911, to keep the force of men and teams assembled by him

busy; that a large number of said teams were hired by the day, and that a large number of men assembled were doing piece work, that were paid so much for each crate picked and packed, and were not receiving so much per day wages; that by reason of the fact that such men and teams could not be kept busy, a large number of said teams were withdrawn and a large number of said men left the employment of the plaintiff; that the defendant had notice that such disorganization of the force of men and teams thus assembled was likely to occur if crate material was not promptly delivered by it to the plaintiff, that by reason of said disorganization and loss of the services of men and teams as aforesaid, when a sufficient number of crates were finally delivered to the plaintiff on to-wit, March 30th, 1911, in which to pack and ship all tomatoes that should thereafter become ripe, the plaintiff's force had become so disorganized that the plaintiff was not able to pack and ship all tomatoes thus becoming ripe, and that thereby, to-wit, thirteen thousand (13,-000) crates of tomatoes became overripe and unfit for shipment and spoiled in the field of the plaintiff; that by reason of the fact that the plaintiff was unable to pick from the field such tomatoes as became ripe and ready for shipment after to-wit, March 15, 1911, a large number of the plants of the plaintiff became affected and in whole or in part quit bearing and that a large number of the plants of the plaintiff withered up and died by reason thereof, that by reason of the fact that the tomato vines of the plaintiff had become affected as aforesaid, plaintiff's crop of tomatoes produced on said vines aforesaid, was decreased to the extent of to-wit, seven thousand

(7,000) crates of tomatoes, which the same would otherwise have produced.

"That by reason of the fact that the force of men assembled by the plaintiff became idle after to-wit March fifteenth, 1911, due to the negligence and carelessness of the defendant as aforesaid, a large number of said men threatened to leave the employment of the plaintiff and seek employment elsewhere, that in order to keep said force of men together and be in readiness to pick and pack tomatoes as soon as carrier crates should be delivered by the defendant, the plaintiff offered to and did furnish board to a large number of said men at his, the plaintiff's expense in an endeavor to keep said force of men together as aforesaid, and the plaintiff thereby spent a large sum of money, to-wit, nine hundred and eighty-eight dollars and fifty cents ($988.50).

"And the plaintiff says that by reason of the negligence and carelessness of the defendant in the premises as aforesaid the plaintiff lost a large sum of money, to-wit, nine hundred and eighty-eight dollars and fifty cents ($988.50) expended for board for men as aforesaid, and lost to-wit, ninety-three thousand (93,000) crates of tomatoes as aforesaid, and that each crate of said tomatoes lost was of the net value to the plaintiff of to-wit, one dollar and thirty-five cents ($1.35).

"Wherefore, the plaintiff brings this suit and claims one hundred thousand ($100,000.00) dollars damages."

After having unsuccessfully interposed a demurrer to this second amended declaration and each count thereof, and after having filed a motion to strike certain specified portions of such declaration, which was overruled "with leave to the defendant to make such motion or objections at the trial of said cause as to the elements of damage

properly recoverable herein as it may be advised," the defendant successively filed various and sundry pleas, all of which went out either on demurrer or motion to strike, with the exception of the first original plea and the amended eighth plea, which pleas are as follows:

"1. That, it is not guilty as alleged in plaintiff's declaration, and each count thereof."

"8th. And for an amended eighth plea to the 31st count of plaintiff's amended declaration, the defendant says that, at the beginning of the shipping season the plaintiff had on hand and ready for immediate use approximately forty-five hundred crates available for packing and shipping tomatoes, and that from the beginning of the shipping season up to March 23, 1911, the defendant delivered to the plaintiff certain cars of crate material, and that on no date during said period did the plaintiff exhaust his supply of crate material, nor did he ship to the full amount of his supply on hand at a period up to March 23rd; and that thereafter, on March 30, 1911, the plaintiff again received large quantities of crate material, which supply exceeded at all times any amount shipped on any date thereafter; and if the plaintiff suffered any damage by reason of delay in delivery of crate material, or if there was any duty upon the defendant to deliver said crate material, the only loss incurred by the plaintiff was the market price of said tomatoes during the period of, to-wit: March 23rd, 1911, to March 29th, 1911, both inclusive, and that the plaintiff's damages, if any, would not exceed for that period the amount of carrier crates ordered out by him from Cummer Lumber Company to be delivered between the days of such period."

Issue was joined upon these two pleas and the cause was submitted to a jury, which resulted in a verdict in

favor of the plaintiff for the sum of $30,000.00, together with interest thereon at the rate of eight per cent. per annum from the 22nd day of September, 1911.

Whereupon the following judgment was entered:

"Thereupon it is considered, ordered and adjudged that the plaintiff T. J. Peters, do have and recover of and from the defendant Florida East Coast Railway, a corporation, the sum of $30,000 principal, together with $8,839.98 interest, and the costs of this cause amounting to $340.65, making a total of $39,180.63, and let execution issue therefor."

This judgment the defendant has brought here for review and has assigned eighty-one errors, though all of them are not argued. As is stated by the defendant in its brief, "The scope of the pleadings upon which the case was submitted to the jury may be ascertained by reading the first and thirty-first counts of the declaration and the first and eighth pleas."

While we have considered all of the assignments which have been urged before us, we shall confine our discussion to such of them as we think require treatment.

*Shutts, Smith & Bowen, Armstead Brown* and *W. A. Blount,* for Plaintiff in Error.

*Hudson, Wolfe & Cason, Atkinson & Burdine* and *Nathan P. Bryan,* for Defendant in Error.

SHACKLEFORD, J., (*after stating the facts as above.*) —Owing to the order in which the different assignments of errors are argued and the manner in which they are presented in the several briefs filed by the plaintiff in error, the defendant in the court below, we have found it difficult to determine just what asignments of error are insisted

upon and what assignments may be deemed to be abandoned for failure to argue them. It would seem that the defendant in its main brief has erroneously designated the numbers of some of the assignments which it urges before us, which is probably accounted for by the fact that several successive sets of pleas, amended pleas and additional pleas were filed to which demurrers were interposed and the rulings upon which form the basis for a number of the assignments. The defendant filed nine pleas to the second amended declaration, to all of which, with the exception of the first which was a plea of not guilty, a demurrer was interposed and sustained. Thereupon by leave of the Court the defendant filed its amended pleas numbered from two to nine, to all of which, with the exception of the eighth which we have copied in the foregoing statement, the plaintiff interposed a demurrer and also filed a motion to strike certain designated pleas. Before any ruling was made either on such demurrer or motion the defendant confessed the demurrer to the 2nd, 3rd and 4th amended pleas and by leave of court amended each of such pleas, with the understanding that the demurrer interposed to the first amended pleas should stand to these second amended pleas. This demurrer was sustained to all of the pleas, and afterwards by leave of the court the defendant filed additional pleas numbered eleven and twelve, to each of which a demurrer was interposed and sustained. The first two assignments are based upon the overruling of the demurrer to the second amended declaration and the overruling of the motion to strike certain specified portions thereof, neither of which assignments is argued, therefore must be treated as abandoned. Assignments numbered from three to twenty-five inclusive are based upon rulings sustaining demurrers to specified pleas and to motions to strike certain of them.

In its main brief the defendant has a prefatory statement in which certain propositions of law are laid down which it is claimed are controlling and decisive of the case. The first of such propositions is "The plaintiff not being the owner of the crates in question at the time of the alleged delay in the transportation thereof cannot maintain this action." The defendant begins its argument in its main brief as follows:

"I. We are confronted at the outset with the question of the right of the plaintiff to maintain this action. This question is presented in the second and third second amended pleas filed on .September 28th, 1914, (Tr. p. 118), to which pleas a demurrer was sustained, (Tr. p. 121) and by defendant's additional plea numbered eleven, (Tr. p. 123) to which a demurrer was sustained (Tr. p. 127).

"The tenor of these pleas is that the several carloads of crates alleged to have been delayed in transportation by the fault and negligence of the defendant were not, at the time of the delivery to the defendant, nor thereafter, until the delivery of them by the defendant to the plaintiff, the property of the plaintiff, and that the defendant never at any time contracted with the plaintiff that it would carry and deliver said crates or any of them to him. These pleas, we submit, present a good defense to this action, for it is true that if Peters did not own the crates until after they were delivered to him (which delivery, of course, was not made until after the alleged negligent delay), then the authorities are to the effect that he cannot maintain the suit."

The caption to this argument is "seventeenth, eighteenth and twenty-fourth assignments of error." These assignments are as follows:

"(17)   The court erred in sustaining plaintiff's demurrer to defendant's second amended plea number two (2), filed September 28, 1914."

"(18)   The court erred in sustaining plaintiff's demurrer to defendant's second amended plea number three filed September 28, 1914."

"(24)   The court erred in sustaining plaintiff's demurrer to defendant's eleventh additional plea filed May 3, 1915."

The second amended pleas numbered two and three and the eleventh additional plea are as follows:

"2nd.   And for an amended second plea to plaintiff's second amended declaration, defendant says that it entered into a contract with the Cummer Lumber Company, a corporation, to carry and transport for it, from Jacksonville, Florida, to Peters Station, Florida, the said several cars of carrier crates in said second amended declaration alleged, and defendant says that it safely carried said several cars of carrier crates from Jacksonville, Florida, to Peters Station, and delivered the same in good order in compliance with instructions of the said Cummer Lumber Company, and defendant denies that it had any knowledge that the plaintiff would suffer any special damages whatever by reason of any delay in the delivery of said several cars of carrier crates, as alleged in said declaration.

"3rd.   And for an amended third plea to plaintiff's second amended declaration, defendant says that there was no privity of contract existing between the plaintiff and the defendant whereby the defendant owed the plaintiff any extraordinary or special duty in the transportation of the said several cars of carrier crates in said declaration alleged, and defendant says that during the

period covered by the several shipments alleged in said declaration, there existed upon plaintiff's line of road between Jacksonville, Florida, and Peters Station, Florida, an unusual and extraordinary condition of congestion in the movement of freight, and beyond the control of this defendant, which resulted in a delay in all freight transportation upon defendant's line of road, and defendant says that it transported and delivered to the plaintiff as rapidly as it could handle the congested traffic upon its said line of road, the said several cars of carrier crates, having due regard to the laws of the United States prohibiting the discrimination by the defendant between shippers on its line of road, or in the handling of traffic upon its said road, the defendant during all of said times being an interstate common carrier of freight and passengers by rail and subject to the laws of the United States; and defendant denies that it had any notice that the plaintiff would suffer the special damage alleged in plaintiff's said second amended declaration, or any damage whatever, by reason of the delay in the delivery of the said several cars of carrier crates, as alleged in said declaration."

"11. That the said several carloads of crate material alleged in the said declaration to have been delayed by the fault and negligence of the defendant were not at the time of the delivery of them to the defendant nor thereafter, until the delivery of them by defendant to plaintiff, the property of the plaintiff, and that the defendant never at any time contracted with the plaintiff that it would carry and deliver the same or any of them to him."

These three assignments are the first assignments which are urged before us in the main brief and they are argued together, which argument is confined to the lack

of the necessary ownership of the plaintiff in the crate material to enable him to maintain this action, as is shown by the statement in such brief which we have copied above. In its reply brief the defendant confines its argument to the 18th and 24th assignments as to this lack of ownership in the plaintiff, but in its supplemental brief the defendant also argues assignments numbered 3 and 4 which are based upon the sustaining of demurrers to the defendant's original second and third pleas to the second amended declaration, which second and third pleas are as follows:

"2. And for a further plea, the defendant says that, the cars of crate material alleged to have been delayed through the fault, delay and negligence of the defendant, were not at the time of the alleged delay, the property of the plaintiff, but on the contrary, the said crate material was purchased of and from the Drake Produce Company, who were the owners of the said crate material from the time the said material left the mill and yards of the Cummer Lumber Company, in Jacksonville, Florida, until the time it was delivered to the plaintiff at Peters Siding, Florida; and that the plaintiff was not the bailee, nor had any actionable interest in said goods for any damage that might have been caused by injuries to said goods or damage occasioned by any delay thereof.

"3. And for a third plea the defendant says that, there was no privity of contract existing between the plaintiff and the defendant whereby the defendant owed the plaintiff any extraordinary or special duty, or any duty whatsoever to carry and safely deliver said cars of crate material; and defendant says that if any duty on its behalf was owed to any one whomsoever, this duty

was to the Drake Produce Company, the owner of said crate material, and not to the plaintiff."

We shall not copy the grounds of the demurrers which were addressed to these respective pleas which we are now considering, but we shall treat together the assignments based upon the sustaining of such demurrers, confining ourselves to the argument made by the defendant in support thereof as to lack of ownership of the plaintiff.

We have examined all of the authorities cited by each of the parties litigant in their several briefs concerning these assignments, as well as a number of others, but we shall not undertake a review and analysis of them, which would be not only quite tedious but comparatively unprofitable. We shall content ourselves with referring only to such authorities as, we think, are in point and helpful. After a somewhat extended investigation, the clearest and most satisfactory discussion which we have found concerning the law as to who is the proper party plaintiff to bring an action against a carrier for the loss of or injury to goods entrusted to it for transportation is in Sections 397 to 400 inclusive on pages 940 to 945 of 4 R. C. L. As is well said in section 397, this question "seems to have disturbed the judicial mind in England at a very early date and has since resulted in considerable confusion among the authorities generally. That the real owner, whether consignor, consignee, or neither of these, as for instance, a bailor of the consignor, may sue for such a loss or injury on proof of title is well established, and the later English doctrine seems to be that an action can be maintained only by such owner. In this country the point has been variously determined though perhaps there is not such a great conflict when the facts of the

cases are taken into consideration as would at first seem. * * * The question, however, that has been provocative of most discussion has been as to whether consignor or consignee is the person to sue for a loss, injury, or non-delivery of goods." In sections 398 and 399 is discussed the respective rights of the consignee and consignor to maintain the action and in section 400 an attempt is made to state "the true doctrine as to proper party plaintiff," wherein it is said: "A study of the circumstances under which a right of action is given to the consignee and consignor will lead to at least one conclusion, namely, that where the consignor has sued, the courts seem generally to have held that he was a proper party and could maintain his action, and where the consignee has sued, they also seem to have generally sustained him. Hence, the apparent confusion in courts as to just who is the proper party plaintiff. However, be it said, the real conflicts are not numerous, and many of the apparent differences of judicial opinion and most of the confusion springing therefrom are the result of fallacious and illogical reasoning, due largely to the fact that in such cases the courts have treated the question from the standpoint of the relation existing between the shipper and consignee in reference to the ownership and right of possession of the property, instead of considering the true question of the relation the carrier sustains to each of these parties respectively, an element heretofore considered. Any difference or diversity of interest that may arise between the consignor and consignee can in no respect concern the carrier so long as it is protected against responding for the property more than once. The ownership may be general and unqualified, or special and limited; the right of possession may be absolute or contingent; or there may

be a special contract for the transportation of the goods; in any one of these instances the interest would be sufficient on which to found an action in the absence of the assertion of a superior right in another. The true premise on which to base an injury as to the proper party plaintiff is, therefore, that both the consignor and the consignee may have an interest in the goods or their safe transportation in which event either may sue; but the success of the demand and claim of one apparently entitled to possession as against the carrier will relieve the carrier from further responsibility even to one having a better right."

It is true that the discussion in these sections of the work cited is primarily as to who is the proper party plaintiff to bring an action against a carrier for the loss of or injury to goods entrusted to it for transportation and only incidentally is the question treated as to who is the proper party plaintiff in an action against a carrier for the negligent delay in the transportation and delivery of goods, which is the point presented to us for consideration. These two questions are not the same, but such a close relation exists between them that certain principles are applicable to each alike. Thus on page 860 of 3 Ency. of Pl. & Pr. it is stated that there can be no difference in principle in actions against a carrier for the loss of or injury to goods and actions for the negligent delay of goods as regards the form of action and the proper parties. Practically all the authorities which have been cited to us by each of the respective parties relate to the loss of or injury to goods which have been entrusted to a carrier for transportation. Whatever may be the points of difference between the two classes of action, in an action for negligent delay in the transportation and delivery of goods,

as well as in an action for the loss of or injury to goods, in determining who is the proper party plaintiff the facts of the case should be considered and the relation which the carrier sustains to each of the parties, the consignor and the consignee. We have held that the consignee has a right of action against the carrier for the negligent delay of goods. See Williams v. Atlantic Coast Line R. Co., 56 Fla. 735, 48 South. Rep. 209, 24 L. R. A. (N. S.) 134, 131 Amer. St. Rep. 169. We have also held that the consignor might maintain an action against a carrier for negligent delay in transporting goods. Fornel v. Florida East Coast R. Co., 65 Fla. 102, 61 South. Rep. 194, and Aultman v. Atlantic Coast Line R. Co., 71 Fla. 276, 71 South. Rep. 283. We have likewise held: "A bailee has such special property in the goods intrusted to him that he may maintain an action for damage thereto, so a factor, a broker, a warehouseman, a carrier or any person employed to perform a service in respect to the goods of another with which he is intrusted for that purpose, may maintain an action for the recovery of them, or for any damage done them while in his charge." Atlantic Coast Line R. Co. v. Partridge, 58 Fla. 153, 50 South. Rep. 634. As is readily apparent, our own holdings in these cited cases are in line with the statement in 4 R. C. L. section 400, which we have copied above. As is also stated in section 398 of that work: "However, it is generally found stated in the books that the consignee is prima facie the person entitled to sue for an injury to or loss of a shipment of goods, and this principle holds true whether or not in the particular jurisdiction the strict view is entertained that the owner alone can bring an action, since it is a presumption of law that on the delivery of goods to a common carrier the title thereto vests

in the consignee, and this presumption the carrier has a right to rely on, in the absence of express notice from the consignor to the contrary. Indeed, where the property is received on an unconditional and unrestricted consignment, the carrier not only may, but must, treat the consignee as the absolute owner until he receives notice to the contrary."

As is further stated in such section: "It has been held, however, that the consignee of goods may sue the carrier for losses he has sustained through negligent delay in their transmission, although he refuses to accept them because not sooner delivered and notwithstanding the fact that title may have been retained by the consignor." In support of this statement is cited Clute v. Chicago, Rock Island & Pacific Ry. Co., 83 Kan. 333, 111 Pac. Rep. 431, 30 L. R. A. (N. S.) 1071, which is a well-reasoned case. We take therefrom the following excerpt: "Ordinarily the right of action for delay or damages is in the consignee. 6 Cyc. Law & Proc. pp. 510, 511. In Savannah, F. & W. R. Co. v. Commercial Guano Co. 103 Ga. 590, 593, 30 S. E. 555, 556, it was held that where, by reason of injury to the goods in transit, the consignee refuses to receive them, the consignor may sue; but this does not negative the right of the consignee to recover for any loss on his part. The court said: 'In the event of liability by the carrier, the only question which remains for determination is whether or not the plaintiff, who sues, has been damaged, and, if so, to what extent.' Much artificial and technical reasoning has been employed to determine the proper plaintiff in an action of this sort. The consignor has been allowed to recover for the benefit of the consignee (6 Cyc. Law & Proc. p. 513, note 91), and the consignee for the benefit

of others having an interest (6 Cyc. Law & Proc. p. 511, note 84). These refinements are not in harmony with the spirit of the Code. Neither the consignor nor the consignee can be said to be a stranger to the transaction. The carrier has notice of the interest of each, and, if either suffers an injury through its fault, he should be permitted to obtain redress in his own name in a direct action against the wrongdoer. This is the effect of the decision in Missouri P. R. Co. v. Peru-Van Zandt Implement Co. 73 Kan. 295, 6 L. R. A. (N. S.) 1058, 117 Am. St. Rep. 468, 85 Pac. 408, 87 Pac. 80, 9 A. & E. Ann. Cas. 790, where it was held that an agent to whom his principal sent goods for sale might recover for his commissions lost through the negligent delay of the carrier." We would add that, in referring to the spirit of the Code, obviously Section 5618 of the General Statutes of Kansas (1909) is meant, which provides that "Every action must be prosecuted in the name of the real party in interest, except as otherwise provided," &c. Of the same import is our statute, section 1365 of the General Statutes of 1906, Compiled Laws of 1914: "Any civil action at law may be maintained in the name of the real party in interest. This shall not be deemed to authorize the assignment of a thing in action not arising out of contract. An executor, administrator, trustee of an express trust (including a person with whom or in whose name a contract is made for the benefit of another, or when expressly authorized by statute), may sue without joining with him the person for whose benefit the action is prosecuted.

"By amendment the nominal plaintiff may be stricken out and the case may proceed in the name of the use plaintiff."

Concerning this statute we held in Woodbury v. Tam-

pa Water Works Co., 57 Fla. 249, 49 South. Rep. 556:
"The purpose of the statutory provision that 'any civil
action at law may be maintained in the name of the real
party in interest,' is to relax the strict rules of the com-
mon law so as to enable those directly interested in, but
not parties to, a contract, to maintain an action for its
breach; and the statute should be so applied as to accom-
plish its statutory purpose."

Even if it be true, as is said in a note on page 944 of
4 R. C. L., and in a note on page 617 of 64 L. R. A.,
that "Notwithstanding the common statutory provisions
requiring actions to be brought by the real party in inter-
est, nearly all the cases in regard to carriers seem to be
determined on common law principles," we do not see
how that would sustain the contention of the defendant,
since the common law rule was that "an action for a tort
must in general be brought in the name of the person
whose legal right has been infringed." 15 Ency. of Pl.
& Pr. 517 and 719. As we have already seen, as a gen-
eral rule, the consignee is *prima facie* entitled to bring
an action for the loss of or injury to goods or for negligent
delay in their delivery, since it is a presumption of law
that on the delivery of goods to a common carrier the title
vests in the consignee. See the discussion in Griffith v.
Ingledew, 6 Sergeant & Rawls, (Pa.) 429, 9 Amer. Dec.
444; Southern Express Co. v. Armstead, 50 Ala. 350;
Madison, Indianapolis and Peru R. Co. v. Whitesel, 11
Ind. 55; Tebbs v. Cleveland, C. C. & St. L. Ry. Co., 20
Ind. App. 192, 50 N. E. Rep. 486. Of course, it is true
that "One having no property or interest in the goods can-
not sue in tort a carrier for his breach of duty." Edgerton
v. Chicago, R. I. & P. R. Co., 240 Ill. 311, 88 N. E. Rep.
808, but, as we have already seen, in order to maintain an

action against a carrier, either *ex contractu* or *ex delicto,* the plaintiff does not have to be the absolute owner of the goods. If the plaintiff has a special interest therein and his legal rights have been invaded, that would entitle him to maintain the action. As was said in Perkins Co. v. American Exp. Co., 199 Mass. 561, 85 N. E. Rep. 895, "The consignee may maintain an action against the carrier for a breach of duty imposed by law." That the law imposes the duty upon a carrier to transport and deliver to the consignee goods which have been entrusted to it within a reasonable time there can be no question. See 4 R. C. L. Sec. 206 on page 737; 1 Michie on Carriers, 904 and authorities there cited; Vicksburg & M. R. Co. v. Ragsdale, 46 Miss. 458. As is said in 1 Moore on Carriers (2nd ed.) page 289, "The liabilities of a carrier depend not only on his contract, but also on obligations imposed by law; and an action may be brought either on the contract or for negligence or damage to person or property, as the case may be." Also see Central Trust Co. v. East Tennessee, V. & G. Ry. Co., 70 Fed. Rep. 764. In Williamsport Hardwood Lumber Co. v. Baltimore & Ohio R. Co., 71 W. Va. 741, 77 S. E. Rep. 333, it was held: "A consignee of lading under a contract of shipment by a common carrier has a beneficial interest therein, entitling him to sue for and, upon proper proof, recover damages for loss or injury thereto, or for unreasonable and negligent delay in delivery." See 6 Cyc. 510, and authorities cited in the notes. We would also refer to Parker Buggy Corporation v. Atlantic Coast Line R. Co., 152 N. C. 119, 67 S. E. Rep. 251; Deaver-Jeter Co. v. Southern Railway, 95 S. C. 485, 79 S. E. Rep. 709; Robinson & Martin v. Houston & T. C. Ry. Co., 105 Tex. 185, 146 S. W. Rep. 537; Missouri Pac. Ry. Co. v. Peru-Van

Zandt Implement Co., 73 Kan. 295, 85 Pac Rep. 408, 6 L. R. A. (N. S.) 1058, 117 Amer. St. Rep. 468, 9 Ann. Cas. 790. Interesting discussions of this vexed question, with citations of authorities will also be found in 3 Hutchinson on Carriers (3rd ed.) sections 1304 to 1320; 1 Michie on Carriers, sections 809 to 811, and section 958; 3 Ency. of Pl. & Pr. pages 824 to 834. As is said in Section 958 of Michie on Carriers, "The carrier has notice of the interest of both the consignor and consignee, and if either suffers an injury through the delay, he should be permitted to obtain redress in his own name in a direct action against the carrier. The consignee is always presumed to possess the necessary ownership until the contrary is shown." It would appear from the allegations in the declaration in the instant case that the consignee is the party who has been damaged by the negligent delay of the carrier in the transportation and delivery of the crates, with which damages the consignor has no especial concern, therefore the consignee is not only the proper party plaintiff in this action but "the real party in interest" within the intent and meaning of our statute, section 1365 of the General Statutes, which we have copied above. In International Ocean Telegraph Co. v. Saunders, 32 Fla. 434, 14 South. Rep. 148, 21 L. R. A. 810, we held: "The person *to whom* a telegram is sent can maintain an action for whatever legal damage that results to him from the negligence of the company in its transmission or delivery, where the message shows that he is interested in it, or that it is for his benefit, or that damage will result to him from such negligence."

It seems to us that this principle would apply with like force to a consignee to whom goods had been shipped and who had suffered special damages by reason of the

negligent delay of the carrier in the transportation and delivery of the goods entrusted to it for the consignee. It should be kept in mind that this is not an action *ex contractu,* but an action *ex delicto* brought by the consignee against the carrier for the recovery of damages which the consignee claims to have sustained by reason of the failure of the carrier to discharge a specified duty and to fulfil an obligation which the law casts upon the carrier. Reading the declaration and the pleas now under consideration in the light of the authorities which we have cited, it is obvious that the contention of the defendant that the plaintiff in the instant case is not entitled to maintain this action has not been sustained. It is also obvious from what we have said that we are of the opinion that no error has been made to appear to us in any of the several rulings which we have been considering, therefore the assignments based thereon which have been argued before us must be held to have failed. We have devoted considerable time and thought to the investigation and discussion of the plaintiff's right of action for the reason that greater stress has been laid upon that question by the defendant both in its several briefs and in its oral argument than upon any other point argued before us.

Assignments 14, 18, 19, 22 and 25, all of which, with the exception of the 22nd, which is based upon the sustaining of a motion to strike the sixth amended plea, are based upon the sustaining of demurrers to the amended plea numbered 6, the second amended pleas numbered 3 and 4 and the additional plea number 12. All of these assignments are argued together by the defendant in support of the propositions, as stated in its main brief, that "A railroad company is not liable for delays in shipments provided such delays are the result of an over-press of

traffic," and that "A severe snowstorm or atmospheric condition beyond the carrier's control will excuse a delay in shipping where the carrier is free from negligence." The 18th assignment which is based upon the sustaining of a demurrer to the second amended plea numbered 3 was copied above, as was also such plea, in our discussion of the plaintiff's right of action, so there is no occasion to copy such plea again, though we shall again consider the 18th assignment, since the defendant has seen fit to argue it again in support of the two propositions which we have just copied. The second amended plea numbered 4, the sixth amended plea and the 12th additional plea are as follows:

"4th.    And for an amended fourth plea to plaintiff's second amended declaration, defendant says that it did not, at or before the time defendant received from said Cummer Lumber Company, at Jacksonville, Florida, the said several cars of carrier crates in said declaration alleged, to be delivered to the plaintiff at Peters Station, Florida, have any knowledge that the plaintiff would suffer the special damage alleged in said declaration, or any damage whatever, by reason of the delay in the delivery of said carrier crates, by reason of any of the said causes alleged in said declaration, nor did this defendant have any knowledge at the time of the receipt by this defendant of the said several cars of carrier crates, or at any time during the several periods between the time of the receipt by this defendant of the said several cars of carrier crates and their delivery to the plaintiff; that the plaintiff did not have on hand a sufficient amount of carrier crates to meet his reasonable demands; and defendant alleges that it was during all of said time an interstate carrier of passengers and freight and subject to the laws of the United

States with reference thereto, and further says that by the laws of the said United States this defendant is prohibited from discriminating between shippers upon its line of road in the carriage and delivery of freight, and defendant alleges that during the time covered by the said several shipments of carrier crates, there existed upon its line of road an unusual and extraordinary condition of congestion in the movement of freight, beyond the control of defendant, and defendant alleges that it transported the said several cars of carrier crates from Jacksonville, Florida, to Peters Station, Florida, as promptly as, and at the earliest possible date it could so do without discriminating in the handling of said freight in favor of the said plaintiff and against other patrons of its said road. Wherefore defendant says that the plaintiff should not have and recover from the defendant the said special damages in said declaration alleged."

"6th. And for an amended Sixth Plea to Plaintiff's Amended Declaration, defendant says that during the time of alleged delay in the transportation of the said several cars of carrier crates from Jacksonville, Florida, to Peters Station, Florida, as alleged in plaintiff's amended declaration, the trains of the defendant operating upon its line of road between Peters Station and Jacksonville, were operated and controlled by means of telegraphic communications transmitted by the employees of the defendant to the train crews of the several trains operating upon the line of the defendant's road between the points aforesaid; that the system of appliances for transmitting telegraphic communications to and from the various stations on the line of defendant's road was adequate and successful, under the usual climatic and electrical conditions of the earth and atmosphere, to properly and speed-

ily handle the traffic upon the road of the defendant, and that the same was properly installed and maintained at all times during the period hereinbefore referred to, and defendant used all care and diligence to maintain said telegraphic service in a proper working condition; but defendant says that during the time of the alleged delay in the transportation of the said several cars of carrier crates in plaintiff's amended declaration alleged, there existed throughout that portion of the State of Florida through which defendant's line of road ran and through which territory it was necessary for defendant to transport said several cars of tomatoes, a peculiar and unknown condition of natural forces, climatic, electrical or otherwise, which operated upon the wires, instruments and appliances used by the defendant in transmitting train orders to the crews of the several trains upon its said line of road, in a peculiar and unknown manner, during the hours approximately from eight o'clock at night to eight o'clock in the morning, causing a failure of the telegraphic instruments, wires and appliances for the transmission of telegraphic train orders along the line of defendant's road, to transmit said telegraphic train orders, by reason whereof it became and was impossible for defendant to promptly and with dispatch move the several trains and cars of freight from place to place along its said line of road, and the said delay in the transportation of the said several cars of carrier crates from Jacksonville, Florida, to Peters Station, Florida, in plaintiff's amended declaration alleged, was due to said climatic, electrical or other unknown cause of nature, and was an act of God, over which this defendant had no control, although it used every endeavor so to do, and to promptly transport said several cars of carrier crates from Jacksonville afore-

said to said Peters Station; and defendant says that said delay was not caused by any failure upon its part to use every endeavor to promptly transport said cars of carrier crates with dispatch; that by reason of the causes aforesaid it became impossible for defendant to operate its said freight trains throughout a large portion of the period hereinbefore referred to by reason of the failure of telegraphic service along its said line of road for the causes aforesaid, and its said freight trains became stalled at various times and places upon its said line of road, not at junction points where train crews were available, and defendant was compelled by reason of the laws to permit its train crews the necessary period of rest, no matter where said train crew happened to be, thereby causing great confusion, congestion and delay in the transportation of the said several cars of carrier crates in plaintiff's amended declaration alleged, and thereby causing great confusion, congestion and delay of all trains upon defendant's line of road, and defendant says that the delay in the transportation of the said several cars of carrier crates in plaintiff's declaration alleged, was occasioned solely by the congestion aforesaid on defendant's line of road due to said climatic, electrical and other unknown causes of nature that made the telegraphic train service along the line of defendant's line of road impossible to operate, and was beyond the control and prevention of this defendant; and defendant says that the plaintiff had knowledge of such congested condition of defendant's line of road and the cause thereof before the delivery to the defendant for transportation of the several cars of carrier crates in plaintiff's amended declaration alleged."

"12. That at, before and during the said time when

the defendant was alleged in said declaration to have, by its fault and negligence, delayed the transportation and delivery of the said cars of crate material, the defendant had and used a roadbed, and all facilities and equipment necessary and adequate for the transportation of such freight and passengers as normally and usually came to it for transportation and delivery, and such as it had any reason to apprehend would come to it for transportation and delivery, during the time mentioned in the declaration; but that before and during said time there was delivered to it for transportation on its line of road an amount of freight very largely in excess of any amount which had ever been delivered to it theretofore, during the existence of large passenger travel, and very largely in excess of any amount which the defendant had any reason to believe would be delivered, and very largely in excess of the capacity of its equipment aforesaid. That there was also passenger travel on said line of road largely in excess of the normal travel thereon and unprecedented and such as the defendant had no reason to foresee or provide for. That during said time, there existed atmospheric or other conditions along the line of defendant's road between Jacksonville and Peters Siding which so affected the telegraph line by which its trains were run as to result in the inability of the defendant to run its trains during a large part of each day, and that the delay in the movement of trains thus produced not only lessened efficiency of all its equipment so that it was unable to transport with promptness any freight (including the crate material mentioned in the declaration) but by the operation of the laws of the United States upon defendant (which avers itself to be now and at said time an Inter-state carrier, and its trains to be now and at said time in Inter-state commerce), pro-

hibiting the use of train crews after sixteen hours continuous service, necessitated the lying still for many hours of each freight train, and that the said causes could never have been foreseen by the defendant, and that they alone produced the delay, if any, complained of in the declaration."

We have examined all the authorities cited by each of the parties concerning these assignments, as well as many others, but shall content ourselves with referring to and discussing only such authorities as we have found of service. Before taking up these assignments for discussion we would call attention to what we have several times said to the effect that there must be a limit to pleading and as to the judicial discretion vested in the trial judge in permitting additional or new pleas to be filed by a defendant, after pleas previously filed by him have been adjudged to be defective or insufficient. See Franklin Phosphate Co. v. International Harvester Co., 62 Fla. 185, 57 South. Rep. 206, 28 Ann. Cas. 1247, and Hooker v. Forester, 53 Fla. 392, 43 South Rep. 241. If not over-indulgent to the defendant, the court, by permitting the defendant to file several successive sets of pleas would seem to have afforded the defendant ample opportunity to set up in a proper manner whatever defense it might have to the action brought against it. Even so, if the trial judge by sustaining demurrers to or motions to strike the pleas, or any of them, upon which rulings these assignments are predicated, thereby prevented the defendant from making any defense which under the law it was entitled to make, we must so declare and determine whether or not reversible error was thereby committed.

We have several times had occasion to discuss the

object of judicial proceedings, the functions performed by pleadings and what should characterize them. See Seaboard Air Line Ry. v. Rentz & Little, 60 Fla. 429, 54 South. Rep. 13, wherein we held, "The pleadings in an action at law are designed to develop and present the precise points in dispute and they should be characterized with certainty, clearness and conciseness." We have also uniformly held that "Any pleading, whether at law or in equity, is to be most strictly construed against the pleader thereof, and this principle applies with especial force to a plea which is in the nature of a confession and avoidance, and where such plea has on the face of it two intendments, it must be construed most strongly against the party who pleads it." Atlantic Coast Line R. Co. v. Beazley, 54 Fla. 311, 45 South. Rep. 761, where prior decisions of this court will be found cited. In his concurring opinion in Atlantic Coast Line R. Co. v. Benedict Pineapple Co., 52 Fla. 165, text 176, 42 South. Rep. 529, text 533, the writer discussed the three kinds of certainty in pleadings to which we would now refer, especially the excerpt from 1 Tidd's Prac. 451. Also see Andrew's Stephen on Pleading page 384; 31 Cyc. 215; Spencer v. Southwick, 9 John (N. Y.) 314; Van Ness v. Hamilton, 19 John. (N. Y.) 349. As was held in the case last cited, referring to pleas in justification, "A plea in bar of the plaintiff's action, must be certain to a common intent; it must be direct and positive in the facts set forth, and must state them with all necessary certainty." It was also held therein that "A plea which professes to be an answer to the whole declaration, but omits to answer a material part, is bad, on demurrer." Another well recognized rule is that a pleading must not be double. See Andrew's Stephen on

Pleading; 1 Chitty on Pleading (16th Amer. Ed.) 249. 558; Gould on Pleading, pages 405, 406; 7th Ency. of Pl. & Pr. 238. As is said in Gould on Pleading, 405, 406; "As to duplicity in the pleadings which follow the declaration, the rule of the common law is that every plea must be simple, entire, connected and confined to a single point, i. e., a single ground of complaint or defense," and, as is said in 7 Ency. of Pl. & Pr. 238, "A plea which contains more than one independent fact, or sets of facts, either of which alone is a sufficient answer to the allegations of the declaration, is bad for duplicity, whether the defense is in bar, or in abatement, or in both." In Bemis v. State, 3 Fla. 12, text 16, this court said: "It is one of the first rules of pleading, that 'pleadings must not be double, and a plea that contains within itself several distinct answers is bad.'"

Before proceeding to examine these special pleas in the light of the principles enunciated in the above cases, we deem it advisable to treat the contention of the plaintiff that there was no necessity for the filing of such special pleas and, therefore, it was improper to do so, for the reason that the defendant could have availed itself of all the matters of defense thereby attempted to be set up under the plea of not guilty. It is true, as is stated in 3 Hutchinson on Carriers (3rd ed.) page 1589, that, in an action in tort against a carrier for a breach of duty in the transportation and delivery of goods, the carrier must plead according to the rules of the common law, unless such rules have been changed by statute, and "all that will be generally required will be a plea of the general issue of not guilty, under which the carrier may avail himself of almost all matters of defence; and it has, therefore been thought that it is seldom advisable

to resort to a special plea." We had occasion to deal with this contention in Atlantic Coast Line R. Co. v. Crosby, 53 Fla. 400, text 432, 43 South. Rep. 318, text 328, wherein we stated that this common law principle of pleading had been changed by Rules 71 and 72 of the Rules of Circuit Court in Common Law Actions, which rules were adopted by this court and became effective on the first day of June, 1873, will be found prefixed to 14 Fla. and are as follows:

"71. In actions for *torts,* the plea of Not Guilty shall operate as a denial only of the breach of duty or wrongful act alleged to have been committed by defendant, and not of the facts stated in the inducement, and no other defence than such denial shall be admissible under that plea; all other pleas in denial shall take issue on some particular matter of fact alleged in the declaration."

"72. All matters in confession and avoidance shall be pleaded specially, as in actions on contract."

We shall not repeat what we said in the Crosby case, but would refer to our discussion and the authorities there cited. See also Andrew's Stephen on Pleading, 238 to 240. We think that since the adoption of these Rules 71 and 72 there can be no question of the right of a defendant in an action on the case to file special pleas in the nature of confession and avoidance and that, if he would avail himself of the benefit of certain matters of defense, he must do so. Such special pleas were filed, together with the plea of not guilty, by the defendant, in an action on the case, in Gulf Coast Transportation Co. v. Howell, 67 Fla. 508, 65 South. Rep. 661, 70 Fla. 544, 70 South. Rep. 567, and a demurrer was interposed to some of such special pleas which was sustained and we discussed the assignments of er-

ror based thereon, upon the second writ of error. It is still further contended by the plaintiff that a defendant in such an action cannot file a plea of not guilty and also special pleas, and Bell v. Niles, 61 Fla. 114, 55 South. Rep. 392, is cited in support of this contention. It is evident that the defendant has misconceived the effect of our holding in this case, which was an action of replevin, and we held therein: "A defendant may specially plead a former adjudication. if he sees fit to do so, but he may not so specially plead it in connection with a plea of the general issue, since a former recovery may be shown in evidence, under a plea of the general issue, as well as pleaded in bar."

The reason for this holding, as is stated plainly in the opinion, is that a defendant may show in evidence a former recovery either under a plea of not guilty or under a special plea and that he has his election as to which plea he will file, but that he should not be permitted to file both pleas, as such a course would unnecessarily encumber the record and tend to embarrass the trial. Section 1454 of the General Statutes of 1906 provides: "All pleas shall be sworn to, either by the defendant or his agent or attorney. But it shall be no objection to any plea that it is contradictory to any other plea filed by the same party in the same cause." While Section 1455 provides: "The defendant may plead as many matters of fact as he may deem necessary to his defense."

It is true that requiring all pleas to be sworn to and at the same time permitting contradictory pleas to be filed is somewhat of an anomaly and has occasioned some discussion in this court. See Sanford v. Cloud, 17 Fla. 532, and Buesing v. Forbes, 33 Fla. 495, 15 South. Rep. 209. Be that as it may, it would seem that the plea

of not guilty in the instant case and the special pleas under consideration are not really inconsistent with each other, as was held in Buesing v. Forbes, *supra*. Also see Barnes v. Scott, 29 Fla. 285, 11 South. Rep. 48, and Gill v. Graham, 54 Fla. 259, 45 South. Rep. 845. Under the provisions of the two statutes which we have copied above and in the light of the discussion in the cited cases, we are of the opinion that the defendant was not precluded from filing special pleas together with the plea of not guilty.

We must now determine whether or not the special pleas under consideration are open to the attack made upon them. It is obvious that all these pleas fall within that class of pleas in confession and avoidance designated as "pleas in justification or excuse," the effect of which is "to show that the plaintiff never had any right of action, because the act charged was lawful." Andrew's Stephens Pleading, 266. As is said in 4 Ency. of Pl. & Pr. 666, "A plea in justification or excuse admits the facts alleged by the plaintiff, but in effect denies that the plaintiff had at any time a good cause of action, either because the conduct of the defendant is justified in law, or because he is excused from liability in the particular case through some act or conduct of the plaintiff. This is also termed an avoidance in law." See also 1 Tidd's Practice 643. As is also said in 4 Ency. of Pl. & Pr. 671 : "The following rules must be carefully considered by the pleader : First. All matters in confession and avoidance must be pleaded specially. Second. The plea must confess the facts pleaded to. The plea must avoid, and the avoidance must be pleaded co-extensive with the confession." It is further true of such a plea, as is true of all pleas, that it "must be an

answer to the whole of what is adversely alleged." Andrew's Stephens Pleading 275. Do the pleas in question measure up to the foregoing requirements?

Taking up these pleas in the order in which they were filed, the first is the amended sixth plea, which was the second attempt to set up such a defense, a demurrer having been sustained to the original sixth plea. On reading this plea we are impressed with its prolixity, which vice is discussed and discountenanced in Van Ness v. Hamilton, 19 Johns. (N. Y.) 349, text 371. It would also seem to be lacking in certainty and clearness. See Seaboard Air Line Ry. v. Rentz, 60 Fla. 429, 54 South. Rep. 13; 2 Saunders on Pl. & Ev. 634, 635. It will also be observed that it professes to answer the entire declaration, which consists of 31 counts; if it should be found to answer only some of such counts, it is demurrable. Van Ness v. Hamilton, *supra*, and 2 Saunders on Pl. & Ev. 649. As we have already said, the declaration claims damages by reason of delay in the transportation of 30 carloads of crate material, each of the first thirty counts being drawn with reference to a single shipment and the 31st count, which we have copied in the statement, being drawn to include all of the shipments. Turning to this last count, we find that it alleges that the 30 cars containing such crate material consigned to the plaintiff were delivered to the defendant at Jacksonville on dates ranging from the 28th day of February to the 27th of March, 1911. Even if we assume that the matters set up in such plea would constitute a good defense to an action for delay in a single shipment, can it be said that such matters constitute a good defense for delay in 30 separate shipments ranging from the 28th day of February to the 27th of March? We do not think so.

It will be further observed that such plea avers that the "peculiar and unknown condition of natural forces, climatic, electrical or otherwise, which operated upon the wires, instruments and appliances used by the defendant in transmitting train orders to the crews of the several trains upon its said line of road, in a peculiar and unknown manner, during the hours approximately from eight o'clock at night to eight o'clock in the morning, causing a failure of the telegraphic instruments, wires and appliances for the transmission of telegraphic train orders along the line of defendant's road, to transmit said telegraphic train orders, by reason whereof it became and was impossible for defendant to promptly and with dispatch move the several trains and cars of freight from place to place along its said line of road, and the said delay in the transportation of the said several cars of carrier crates, * * * was due to said climatic, electrical or other unknown cause of nature, and was an act of God over which this defendant had no control." The plea further avers that as a consequence of being unable to use its telegraph lines for the transmission of messages to its several train crews, directing the movement of its trains, traffic became very much congested and delayed, and "that the delay in the transportation of the said several cars of carrier crates in plaintiff's declaration alleged, was occasioned solely by the congestion aforesaid on defendant's line of road due to said climatic, electrical and other unknown causes of nature that made the telegraphic train service along the line of defendant's line of road impossible to operate, and was beyond the control and prevention of this defendant; and defendant says that the plaintiff had knowledge of such .congested condition of defendant's line of road and the

cause thereof before the delivery to the defendant for transportation of the several cars of carrier crates in plaintiff's amended declaration alleged." We have examined with great care the case of International & G. N. Ry. Co. v. Haynes, 3 Tex. Civ. App. 20, 21 S. W. Rep. 622, the principal case relied upon by the defendant in support of the validity of this plea, wherein it was held:

"1.   A common carrier is not liable for a delay in delivery of freight where such delay resulted from causes beyond the carrier's control, and the carrier exercised due care for the protection and preservation of the property.

"2.   Where such delay was caused by atmospheric conditions, rendering the telegraph wires unavailable, so that the employes in charge of the train could not receive orders, it was beyond the carrier's control and excusable."

We might concede the correctness of this holding and the cogency of the reasoning employed in the opinion, but we do not think that the contention of the defendant is supported thereby. As the opinion clearly shows, only a single shipment was involved in the cited case, while 30 shipments are involved in the instant case. Even if, as the plea avers, the climatic, electrical or other unknown causes, which prevented the use of its telegraphic service by the defendant to direct the movements of its trains, continued through a period of about 30 days, it is averred that such disturbance was approximately only from the hours of 8 o'clock P. M. to 8 o'clock A. M., so the defendant had about 12 hours every day in which it could use its telegraph lines. We might further concede the correctness of the further proposition

advanced by the defendant, that "A severe snowstorm or other atmospheric condition beyond the carrier's control will excuse a delay in shipping where the carrier is free from negligence," which finds support in 4th Elliott on Railroads, section 1555 on page 324, which is cited by the defendant. The plea in question does not aver that the delay was occasioned by "a severe snowstorm," though, perhaps, the existence of atmospheric conditions, due to climatic, electrical or other unknown causes, which prevented the use of telegraph lines for the transmission of messages for approximately 12 hours every day during a period of about 30 days, is even as rare and wonderful a phenomenon in Florida as a snowstorm, since flakes or flurries of snow have been known to fall in some portions of this State for a short time. Conceding further that this disturbance of telegraphic communication occasioned congestion of freight along the defendant's line of road and thereby produced delay in the transportation of freight, and "that the plaintiff had knowledge of such congested condition * * and the cause thereof before the delivery to the defendant for transportation of the several cars of carrier crates," that of itself would not justify the defendant or excuse its delay, which is alleged in the declaration. The plea does not aver that the defendant notified the plaintiff before or at the time it received the several shipments of the circumstances likely to occasion delay, or that it obtained the plaintiff's consent, either express or implied, to the delay. See Joynes v. Pennsylvania R. Co., 235 Pa. St. 232, 83 Atl. Rep. 1016, Ann. Cas. 1913D 964, wherein it was held: "When an emergency arises and a carrier unexpectedly has more business than it can accommodate, and it receives goods without notice to

the shipper of the probable delay, and fails to obtain his assent, express or implied, to the delay, it is bound to transport the goods within a reasonable time, notwithstanding the emergency." This case is cited to us by the defendant. As is said in 4 R. C. L. 742-43 : "But when an emergency does arise and more business is suddenly and unexpectedly cast on a carrier than he is able to accommodate, unless the carrier declines to receive the excess offered some shippers must necessarily be delayed. In such a predicament it becomes the duty of the carrier to inform the shipper of the facts at the time of the shipment or as soon thereafter as they become known and thereby afford him the option of acquiescing in the delay or seeking some other line of transportation; otherwise, if the carrier receives goods without notice to the shipper of the circumstances likely to occasion delay, or fails to obtain his assent, express or implied, to the delay, he will be bound to transport them within a reasonable time, notwithstanding such emergency." Also see the authorities there cited, especially Daoust v. Chicago, R. I. & P. R. Co., 149 Ia. 650, 128 N. W. Rep. 1106, 34 L. R. A. (N. S.) 637, and Yazoo & M. V. R. Co. v. Blum Co,. 88 Miss. 180, 40 South. Rep. 748, 10 L. R. A. (N. S.) 432, and the case notes in the two cited volumes of L. R. A. We would also refer to 8 Thompson on Negligence, section 6606; 2 Hutchinson on Carriers (3rd ed.) section 496; 1 Moore on Carriers (2nd. ed.) 360; 1 Michie on Carriers, pages 619, 624, 625; 6 Cyc. 444; Thero v. Missouri Pac. Ry. Co., 144 Mo. App. 161, 129 S. W. Rep. 266; Russell Grain Co. v. Wabash R. Co., 114 Mo. App. 488, 89 S. W. Rep. 908; Missouri, K. & T. Ry. Co. v. Stark Grain Co., 103 Tex. 542, 131 S. W. Rep. 410; Nelson v. Great Northern Ry. Co., 28 Mont.

297, 72 Pac. Rep. 642; Unionville Produce Co. v. Chicago, B. & Q. R. Co., 168 Mo. App. 168, 153 S. W. Rep. 63. Also see our discussion in Seaboard Air Line Ry. v. Rentz, 60 Fla. 429, 54 South. Rep. 13, which was an action for the failure and refusal of a carrier to transport freight. In other words, this "act of God," as the defendant characterizes it, which continued for a period of practically a month, resulting in an interference with and disturbance of the defendant's use of its telegraph lines and thereby producing a congestion of freight, which caused the delay of the several cars of crate material consigned to the plaintiff, was peculiarly within the knowledge of the carrier, with all of the attendant consequences. Under such existing circumstances the defendant might well have been justified in refusing the several shipments. The defendant did not see fit to pursue this course, but continued to receive such shipments from time to time during a period of 27 days. By so doing, in order to escape liability to the plaintiff for delay in the transportation and delivery of such shipments, it became the duty of the defendant to notify the plaintiff of such existing conditions. The mere general averment in this plea "that the plaintiff had knowledge of such congested condition of defendant's line of road and the cause thereof before the delivery to the defendant for transportation of the several cars of carrier crates" is not sufficient. See especially Missouri, K. & T. Ry. Co. v. Stark Grain Co. supra. For the reasons which we have given we are of the opinion that this plea does not measure up to the requirements which we enumerated and does not set forth a sufficient defense, therefore no error was committed in sustaining the demurrer which was interposed thereto. We would add that we have carefully

examined the cases of Yazoo & M. V. R. Co. v. Blum, 89 Miss. 242, 42 South. Rep. 282, Yazoo & M. V. R. Co. v. McKay, 91 Miss. 138, 44 South. Rep. 780, and Perkins v. Cleveland, C. C. C. & St. L. Ry. Co., 183 Ill. App. 531, which are cited and relied upon by the defendant, but see nothing therein to cause us to change the conclusion which we have announced above. Having found that the demurrer was properly sustained to this plea, it becomes unnecessary to pass upon the assignment based upon the sustaining of a motion to strike such plea.

Next in the order of filing come the second amended 3rd and 4th pleas, each of which we have copied above. There seems to be no occasion for discussing the assignments based upon the sustaining of demurrers thereto at any length. We think that the principles which we have laid down in our discussion of the sixth amended plea are sufficient to dispose of such assignments adversely to the contention of the defendant. This is in an action on the case, and, as we have previously said, it is immaterial that "there was no privity of contract existing between the plaintiff and the defendant," as is averred in the second amended 3rd plea. Not only, in our opinion, are these two pleas insufficient as a defense for the reasons stated in the foregoing discussion, but we think that these pleas are further objectionable and defective in that they are clearly duplicitous. It is true that duplicity in a pleading was not a ground for general demurrer, under the rules of common law pleading, but could be reached only by a special demurrer. It is further true that in this State special demurrers have been abolished by statute, so that the proper course to pursue in order to reach duplicity in a pleading is by a motion to

strike such pleading or for the compulsory amendment thereof. Even so, we think that the court would have been warranted in striking these pleas out of its own motion, as tending to embarrass the trial of the cause, therefore no reversible error was committed in sustaining the demurrer to them. It would also seem to be true that these two pleas are infected with such vices as to be open to attack either by a motion to strike out or by demurrer. Southern Home Ins. Co. v. Putnal, 57 Fla. 199, 49 South. Rep. 922.

This brings us to the consideration of the 12th additional plea, which we have also copied above. A reading of this plea discloses that it is another attempt to set up as a defense the same matters in regard to a large excess of traffic and disturbance of the use of the telegraph lines by the defendant, and it is averred therein that these two causes "alone produced the delay, if any, complained of in the declaration." Much of what we said in our discussion of the sixth amended plea is alike applicable to this plea, and it is clearly insufficient under the authorities there cited, so no additional discussion seems to be necessary.

It follows from what we have said that we are of the opinion that these assignments, the 14th, 18th, 19th, 22nd and 25th, have not been sustained, no reversible error having been made to appear to us in any of the several rulings upon which they are based.

Another assignment of error argued by the defendant is the 16th, which is to the effect that the trial court erred in sustaining the demurrer to the amended 9th plea, which plea is as follows:

"9th. And for an Amended Ninth Plea to Plaintiff's Amended Declaration, defendant says that in and

by the contract of carriage entered into by and between the defendant and the Cummer Lumber Company, for the transportation of the said several cars of carrier crates in said amended declaration alleged, it was therein and thereby contracted by and between the defendant and the said Cummer Lumber Company as the agent of the plaintiff, as follows:

" 'No. 8. Claims for loss or damage must be made in writing to this company within ten days after arrival of the goods at their place of ultimate destination in case of fruit, vegetables, and other perishable articles, and within thirty days after arrival at ultimate destination in case of other freight, and unless claims are so made this company shalll not be liable.'

"And defendant says that the plaintiff, or said Cummer Lumber Company did not, within thirty days after the arrival of said several cars of carrier crates at Peters Station, Florida, make claim to this defendant in writing of any loss or damage suffered by reason of any delay in the delivery of the said several cars of carrier crates. Wherefore defendant says that the plaintiff should not have and recover from this defendant the said damages in said amended declaration alleged."

The defendant would seem to lose sight of the distinction between actions for the loss of or injury to goods and actions for damages occasioned by negligent delay in the transportation and delivery of goods, to which last named class the instant action belongs. Even if we concede that the contract set out in the plea be valid in actions for the loss of or injury to goods, which we are not now called on to determine, but would refer to Summerlin v. Seaboard Air Line Ry., 56 Fla. 687, 47 South. Rep. 557, 131 Amer. St. Rep. 164, 19 L. R.

A. (N. S.) 19, such contract has no applicability to an action for special damages occasioned by delay in transportation. Morrow v. Missouri Pac. Ry. Co., 140 Mo. App. 200, 123 S. W. Rep. 1034, and authorities there cited. Also see 2 Michie on Carriers, section 1423; Baltimore & Ohio Express Co. v. Cooper, 66 Miss. 558. 6 South. Rep. 327, 14 Amer. St. Rep. 587; 4 Elliott on Railroads (2nd, ed.) section 1512, pages 229, 230. The discussion and authorities cited in Houtz v. Union Pac. R. Co., 33 Utah 175, 93 Pac. Rep. 439, 17 L. R. A. (N. S.) 628, to which is appended a valuable case note, may also prove of service. We have examined all the authorities cited by the defendant in behalf of this assignment and are of the opinion that they do not support its contention. No error was committed in sustaining the demurrer to this plea. The foregoing assignments are the only assignments based upon the pleadings which have been urged before us that, we think, merit treatment.

We now direct our attention to the assignments based upon the evidence which are numbered from 26 to 58 inclusive and are in the main argued together by the respective parties, though not all of these assignments are insisted upon. We have already extended this opinion to a greater length than we desired for the reason that, in view of the conclusion which we have reached as to the proper disposition of the case, it seemed advisable to settle the different questions presented by the assignments on the pleadings, therefore we cannot discuss these assignments on the admission and exclusion of evidence except in the most general way. We must content ourselves with setting forth certain principles which we conceive to be controlling as applied to the evidence adduced upon the issues made by the pleadings in this particular case. In order to under-

stand the application of these principles it is essential to keep in mind just what the issues are. We recapitulate. This is an action on the case for the recovery of damages alleged to have been occasioned the plaintiff by reason of the negligent delay by the defendant in the transportation of 30 separate shipments in carload lots of crate material, which cars were delivered to the defendant on its line at Jacksonville on divers specified days, ranging from the 26th or 28th day of February, to the 27th day of March, 1911, covering a period of about a month, consigned to the plaintiff at Peters' Siding or Peters' Station, also on the defendant's line of road, which crate material was purchased and ordered by the plaintiff for the purpose of packing and shipping a large crop of tomatoes grown by the plaintiff. See the first and last counts of the declaration copied in the prefatory statement to this opinion. As we have already seen, the defendant made repeated but unsuccessful attempts to set up as a defense certain matters in the nature of confession and avoidance. The only pleas left standing were the plea of not guilty and a plea directed only to the last count of the declaration which set up certain matters in mitigation or certain elements of damages claimed in such count. These two pleas are also copied in the prefatory statement. The case was submitted to the jury upon the issues made by the declaration with its 31 counts and these two pleas. As is said by the defendant in one of its briefs, "under the general issue it could only deny damage, and the delay in the shipment of goods, a charge, which, under the facts of the case, it could not and did not attempt to deny."

Upon the calling of the case for trial, the plaintiff produced and offered in evidence a written stipulation,

signed by the respective counsel for the parties litigant, to the effect that a large number of letters and telegrams described therein might be offered, in evidence without further proof than their introduction, "saving to each party all just exceptions to the admissibility of all such documents as evidence." Such paper contained a further stipulation as to the issuance of 30 bills of lading by the defendant to the Cummer Lumber Co. each for a carload of crate material consigned to the plaintiff, one of which was introduced in evidence, it being agreed that the other bills of lading were identical with it, except as to the date and initial number of each car. Then follows a list of the dates of the bills of lading, with the car initial and number and date each car was shipped and the respective dates of the delivery of the same to the plaintiff. Such paper also contains the following stipulation: "It is also stipulated and agreed that at the beginning of the tomato shipping season in the year 1911 the plaintiff had on hand, ready for use, crate material left over from the preceding season to the amount of four thousand six hundred crates, and that the said plaintiff shipped by freight and express over defendant's railroad (on the dates set forth therein) the number of crates of tomatoes shown in the following schedule, to wit:" We deem it unnecessary to copy the schedule of shipments.

After the introduction of this stipulation the plaintiff then proceeded to offer in evidence the letters and telegrams referred to therein, to the introduction of all of which, it would seem, the defendant interposed certain specified grounds of objection, the overruling of which forms the basis for a number of assignments of error. As will already have been observed, under the issues as made by the pleadings, and also in view of the stipulation entered into by the parties, the salient features of which

we have just set forth, all that it was incumbent upon the plaintiff to prove was the amount of damages which he had suffered as a proximate result of the delay by the defendant in the transportation of the 30 shipments of crate material. Of course, such damages had to be proved by competent evidence. There is a conflict of authority as to the principles which control the measure of damages in actions *ex delicto* as to the elements proper to be considered, as distinguished from actions *ex contractu*. See 8 R. C. L. 453. This court has committed itself to the doctrine that the rules governing the assessment of damages are the same in tort as in contract, except where a tort is committed under such circumstances as to warrant the allowance of exemplary damages. See Western Union Tel. Co. v. Merritt, 55 Fla. 462, 46 South. Rep. 1024, 127 Amer. St. Rep. 169, wherein we held as follows: "The rule in this State as to the measure of damages in actions against telegraph companies for negligence in the transmission or delivery of messages is that formulated in Hadley v. Baxendale, 9 Exch. 341; 'Where two parties have made a contract, which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be either such as may fairly and substantially be considered as arising naturally, *i. e.* according to the usual course of things from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it.' This rule is applied here whether the particular action is *ex contractu* or *ex delicto*."

It is true that the cited case was an action against a telegraph company, but we applied the same rule in Williams v. Atlantic Coast Line R. Co., 56 Fla. 735, 48

South. Rep. 209, 24 L. R. A. (N.S.) 134, 131 Amer. St. Rep. 169, which was an action *ex delicto* by the consignee against a common carrier for damages occasioned by negligent delay in the transportation of freight, wherein we held as follows: "Only such damages may be recovered as were contemplated or might reasonably be supposed to have entered into the contemplation of the parties to the contract of carriage. If the owner of the goods would   charge the carrier with any special damages, he must have communicated to the carrier all the facts and circumstances of the case which do not ordinarily attend the carriage or the peculiar character and value of the property carried, for otherwise such peculiar circumstances cannot be contemplated by the carrier." In addition to these cited cases, also see the discussion of the applicability of the principle laid down in Hadley v. Baxendale, 9 Exch. 341, in the following opinions of this court: Brock v. Gale, 14 Fla. 523, 14 Amer. Rep. 356; Western Union Tel. Co. v. Hyer, 22 Fla. 637, 1 Amer. St. Rep. 222; Western Union Tel. Co. v. Wilson, 32 Fla. 527, 14 South. Rep. 1, 37 Amer. St. Rep. 125, 22 L. R. A. 434; McMillan Brick Co. v. Western Union Tel. Co., 60 Fla. 131, 53 South. Rep. 329, 29 L. R. A. (N.S.) 891. We call attention to the fact that in several of these cited cases concurring and dissenting opinions were filed which it might prove profitable to examine. It may be true, as was held in Bourland v. Choctaw, O. & G. Ry. Co., 99 Tex. 407, 90 S. W. Rep. 483, 3 L. R. A. (N.S.) 1111, 122 Amer. St. Rep. 647, "The rule requiring notice, at the time of making a contract for the delivery of property, of the existence of peculiar conditions under which special damages are likely to arise from its breach, as essential to create liability of the promisor for such damages, is not

a rigid or universal one, or applicable to all cases in which such damages are sought." The discussion of this point in the opinion is interesting. Also see the authorities cited therein, especially Wilson v. Newport Dock Co. 1 L. R. Exch. 177, text 189, wherein Chief Baron POLLOCK said concerning the rule laid down in Hadley v. Blaxendale: "It is quite true, as remarked by Sir James Wilde, in Gee v. Lancashire and Yorkshire Ry. Co. 6 H. & N. 211, 30 L. J. Ex. 11, that the case is not applicable to, and does not decide every case. No rule, no formula could do that." Also see Sir James Wilde's opinion in Gee v. Lancashire & Yorkshire Ry. Co., *supra;* Rogan v. Wabash Ry. Co., 51 Mo. App. 665, text 667; Missouri, K. & T. Ry. Co. v. Belcher, 89 Tex. 428, 35 S. W. Rep. 6; 3 Hutchinson on Carriers (3rd ed.) 1367. Be all this as it may. In the instant case the plaintiff alleges that the defendant, prior to the receipt of the several shipments for transportation to the plaintiff had notice or knowledge of such special circumstances as to require expedition in the shipments, and contends that the evidence adduced sustains this allegation and entitles the plaintiff to recover special damages for negligent delay. The purpose of the plaintiff in offering the documentary evidence to which we have referred, consisting of sundry letters and telegrams, which were admitted over the objection of the defendant, was to show that the defendant had notice or knowledge of such special facts and circumstances as to bring the case within the requirements laid down by this court in the several cases which we have cited.

Upon an examination of such documentary evidence, we find that the first letter introduced was one from the plaintiff to an official of the defendant, dated the 23rd day of May, 1910, which was a request to extend the

sidetrack at the plaintiff's siding to double its present capacity for the reasons therein stated. All the subsequent letters introduced to and from the plaintiff and officers, agents and attorneys of the defendant from May, 1910, up to the 6th of March, 1911, relate to the extension of this sidetrack and contain nothing in regard to the shipment of crate material. It is true that the plaintiff states that he was doubling his planting and would need additional room to handle the next season's crop of tomatoes, and in reply to a letter from one of the defendant's officers the plaintiff stated that he estimated that he would have over 400 acres planted in tomatoes. While this documentary evidence was not in the nature of knowledge or notice to the defendant of any special damages which the plaintiff might sustain by reason of delay by the defendant in the transportation of crate material shipped over the defendant's line to the plaintiff, we are not prepared to declare that error was committed in admitting it. Although incomplete in itself, it tended to throw light upon the preliminary transactions and negotiations taking place between the plaintiff and the defendant and to explain the subsequent notice which was given to the defendant. It is doubtless true, as is stated in 4 R. C. L. 746, that "common carriers are supposed to take notice of such natural events as are familiar to ordinary people. They will be held to a knowledge of seedtime and harvest, and of the general customs relating thereto in the territory where they do business." Even so, knowledge by a carrier of the fact that a shipper on its line has about 400 acres planted in tomatoes would not carry with it the additional knowledge when such tomatoes would be ready for the shipment thereof to begin or when the shipper would need crates, the number thereof that he would need or that a

few days' delay in the transportation thereof would result in special damages to such shipper. As a matter of fact the plaintiff himself testified that "The maturing season for tomatoes came on sooner than usual in 1911, on account of the warm weather—earlier by ten days or two weeks." So far as is disclosed by this documentary evidence, the first notice which the defendant had in regard to delay in the transportation of crate material to the plaintiff and that such delay was occasioning him special damages was contained in the following telegrams:

"(24)                                    March 16th, 1911.

"F. W. Kirtland, G. F. A., F. E. C. Ry. St. Augustine, Fla.

"Just in receipt of following message from T. J. Peters. Five cars crates past due. When can I expect them. Packing stopped. Answer. Will you kindly advise us what reply to make to Mr. Peters.

"Paid. Chg. D. P. Co.          Drake Produce Co.
"(25)        45 pd. D. L.                    3, 16, 1911.
"J. P. Beckwith, St. Augustine, Fla.

"Two cars crates due here last Saturday and Monday not here yet. Am out. Packinghouse shut down, tomatoes ripening. My orders for equipment not filled. Heaviest shipping coming on. Cannot handle my crop with this kind of service. What would you advise. Answer.

"Thos. J. Peters        11.05 Am."

It cannot be contended that this notice relates back to a time prior to shipments of crates which were claimed to be past due. Subsequent telegrams were also introduced in regard to delays in shipments, but there is no occasion to copy or discuss them. The plaintiff

was introduced as a witness in his own behalf and permitted to testify, over the objection of the defendant, as to what amount of fertilizing material he had used in making his crop of tomatoes and of what such material consisted.    This was clearly not pertinent to the issues.    The plaintiff further testified to a conversation which he had at Miami, Fla., in February, 1911, before he began the shipment of his tomatoes, with Mr. McDonald, an officer of the defendant, in which the following took place: "Witness mentioned to him that his crate material would have to be delivered also, or that it would stop witness in the packing.    McDonald said 'Where will your crate material come from,' and witness replied, 'From Cummer Lumber Co. at Jacksonville,' and McDonald said, 'You need not be uneasy; we will handle that too.'    Witness told him he had been losing sleep on that account, and McDonald said he could go back and sleep sound, and that they would take care of it for him."

Even this notice would not be sufficient to apprise the defendant of special damages which the plaintiff might suffer by reason of delay in the transportation to him of crate material, so as to bring the case within the requirements of the rule which this court has adopted.    As we have held in effect, which is squarely in line with the great weight of authority: Where losses and injuries are not a necessary or a usual and ordinary but a proximate though unusual result of actionable negligence, such losses and injuries may be compensated for by the recovery of special damages.    But the negligent party cannot lawfully be made to respond in damages for losses that do not usually result from or could not ordinarily have been foreseen as a proximate result of a particular negligence, unless it be shown that there was knowledge

or notice on the part of the negligent person that such losses would or might follow as a proximate result of a particular negligence.

Unless the carrier had at or before the receipt of the crates for transportation knowledge or notice of the particular special damages that would result from an unreasonable delay in the transportation, such special damages are not recoverable. And if several elements of unusual or special damages would proximately result from the negligence, there must have been notice or knowledge as to each such element of damages as a probable result of the stated negligence before liability for such special damages arises in law.

Where notice was given to the carrier of probable special damages as a result of unreasonable delay in transporting crate material after some shipments of such crate material had already been delivered to the carrier, such notice cannot be held to relate back, and the carrier would be liable only for special damages as for shipments received after such notice was given to it.

These principles were violated not only in the admission of evidence but in the giving of instructions to the jury, and such errors necessarily were harmful and call for a reversal of the judgment. This being true, we do not deem it necessary or even advisable, especially in view of the length of this opinion, to discuss further the assignments based upon the evidence. For the like reason we shall not undertake a discussion of the assignments based upon the charges and instructions given, but shall content ourselves with singling out that portion of the general charge number 6 which, we think, is violative of some of the principles which we have enunciated and which is as follows:

"If you find from a preponderance of the evidence that the plaintiff produced certain tomatoes; that for the purpose of packing and shipping such tomatoes the plaintiff caused to be delivered to the defendant certain crate material to be by the defendant transported to the plaintiff as alleged in the declaration, and that at the time of the delivery of such crate material to the defendant, the defendant was notified or had knowledge of the special use to which such crate material was to be applied; that owing to the negligence of the defendant such crate material was delayed in delivery beyond the reasonable time necessary for such transportation; that plaintiff was thereby caused to lose by decay, rotting, or deteriorating of said tomatoes, and that the negligence of the defendant was the proximate cause of such loss, then you should find for the plaintiff to the extent of such loss so occasioned by the negligence of the defendant. The fact that crates ordered and tendered for shipment were thereafter received by the plaintiff and used subsequent to the date alleged in the declaration and shown by the evidence, to-wit; March 30th, 1911, in shipping other tomatoes thereafter matured, will not deprive the plaintiff of its right to recover for the loss of tomatoes which the plaintiff had made provision to ship between the dates in March alleged in the declaration and shown by the evidence; but plaintiff will be limited in his recovery to the loss of tomatoes for which a provision had been made and which he was caused to lose by the negligence of defendant, between such dates; except as to other elements of damages otherwise proven by the plaintiff and covered by the charges in this cause."

It is harmful error to charge that special damages may be recovered as to which no notice was given

though such charge included a reference to special damages arising from the receipt of other crates after the notice was given.   And this error is not rendered harmless by a subsequent charge that special damages cannot be recovered where it is not shown that notice was given of the anticipated special damages.

The following authorities may also prove helpful upon another trial of the case:  Harper Furniture Co. v. Southern Express Co., 148 N. C. 87, 62 S. E. Rep. 145, 30 L. R. A. (N. S.) 483, 128 Amer. St. Rep. 588; Swift River Co. v. Fitchburg R. Co., 169 Mass. 326, 47 N. E. Rep. 1015; Illinois Cent. R. Co. v. Hopkins Canning Co., 132 Ky. 578, 116 S. W. Rep. 758; Crutcher v. Choctaw, O. & G. R. Co., 74 Ark. 358, 85 S. W. Rep. 770; Vicksburg & M. R. Co. v. Ragsdale, 46 Miss. 458.

For the errors pointed out the judgment must be reversed.

TAYLOR, C. J., and COCKRELL, WHITFIELD, AND ELLIS, JJ., concur.