**THE PENNSYLVANIA RAILROAD COMPANY,** a corporation, v. **ANGELO GRECO.**

25 So. (2nd) 809                      January Term, 1946
April 30, 1946                           Division A
Rehearing denied May 16, 1946

*Knight & Thompson* and *R. E. L. Chancey,* for appellant.
*Worth, Lively & Rodgers,* for appellee.

ADAMS, J.:

Plaintiff sued in tort and later amended his declaration to declare in assumpsit to recover the loss of tomatoes damaged

in transit in July, 1943. The tomatoes were received by Pennsylvania Railroad Company, a common carrier, for shipment in interstate commerce to a point in Florida.

A default judgment was entered by the court on the pleadings at a pretrial conference. The damages were assessed by a jury; final judgment was entered for plaintiff and defendant appeals.

A point has been discussed relative to the nature of the action. Defendant says that when plaintiff sues in tort he must allege and prove negligence; that he may not escape this burden by declaring in assumpsit. When a loss or damage in transit occurs to a commodity the law casts a presumption of negligence on the carrier. Liability follows unless the carrier disproves any contributing neglect. American Railway Express Company v. Fegenbush, 107 Fla. 145, 144 So. 320. This rule is to be applied the same in assumpsit as in tort. In this case the counts in tort were abandoned and the judgment was based on the assumpsit counts.

It is urged that the court erred at the pretrial conference in granting a default which found the defendant liable. We find no error in this ruling. The ruling was based upon pleas which detailed at great length the loading of the green tomatoes in a refrigerated car at New Freedom, Pennsylvania, on August 13th. They were moved by the first train on the same day. On the following day the car arrived at Edgemoor Yard, Delaware, where it was required to stop by the United States Department of Agriculture for inspection and fumigation for Japanese beetle. On the following day it was placed on the fumigation track; eleven hours later it had been fumigated and released by the inspector. About ten hours later the car left via the next available train. The car arrived at Clayton, Delaware, at 2:55 A. M., August 16th, where it was re-iced, but at the time of arrival its bunkers were entirely without ice. The car was then dispatched to its destination in Tampa, Florida, arriving on August 20th, and was delivered to plaintiff on the following day. It is alleged that the car was re-iced at all regular icing stations; that no authority required additional icing stations; that the fumigation required the temperature of the car to be raised to 70

degrees Fahrenheit and necessarily precipitated decay of the tomatoes as well as entailing the aforesaid delay.

The further defense is made that the national emergency, created by the war, placed upon the railroad an unprecedented burden and prevented a speedier delivery of the tomatoes; that executive orders, issued pursuant to law, gave priority to war supplies over other shipments. It was alleged that plaintiff was well aware of the quarantine and the national emergency wherefore it was not necessary for the railroad to give notice or other warning to limit its lawful responsibility.

The high degree of care placed on the carrier is no longer in doubt or open to debate. To avoid liability the burden is on the carrier to plead defensive matter as a predicate for sustaining proof. If the pleadings were deficient in any essential element the judgment against the carrier was free of error because the plea will be construed against the pleader.

With this statement of the case several questions arise: 1. Did the carrier exercise lawful care in selecting a route upon which to move the car? 2. Was the carrier required to warn the shipper of the probability of delay by reason of the national emergency and the quarantine? 3. Are green tomatoes, because of perishable nature, subject to an inherent vice which would relieve the carrier of liability? These minor questions crystalize into a greater one which requires us to ascertain the scope of liability resting upon a common carrier, in interstate commerce, of perishable food.

We have considered this question in Am. Ry. Express Co. v. Fagenbush, supra, and state the law to the effect that in the absence of an act of God, the public enemy, an act of the shipper or an act of public authority, the carrier is responsible for inanimate commodities entrusted to it for transportation. In that case we were speaking of green beans; here the commodity is green tomatoes. We see no reason why the same rule should not apply to either.

Considerable argument has been advanced that because of the highly perishable nature of green tomatoes they possess an inherent vice which is the cause of the loss. This argument is unsound. The decay of a perishable product is a

natural result rather than a cause. Schnell v. The Steamship Vallescura, 293 U.S. 296, 79 L. Ed. 383. Because of the nature of the commodity the carrier must know when it takes the shipment that spoilage will result unless due care is exercised. Due care in handling such a commodity necessarily is greater than if the commodity were less perishable. The law is well settled that a common carrier is bound absolutely to transport and deliver the commodity safely unless he can exonerate himself under one of the above enumerated exceptions. The very fact that the tomatoes were perishable did not render them subject to an inherent vice.

Now we pass to the claim that the loss occurred by reason of stress of traffic occasioned by the war. In F.E.C. Ry. Co. v. Peters, 72 Fla. 311 (text page 363), 73 So. 151, the principle of law was settled, with a host of supporting authorities, to the effect that if the carrier wished to be relieved of its lawful liability because of any emergency it must give notice to the shipper or obtain his consent to assume the hazards created by emergency.

There the intervening cause was said to be within the knowledge of the railroad, whereas, here it is claimed that all knew of the unprecedented burden on the railroads. The trouble with that claim is that shipments of food were being made in the furtherance of the war effort and to sustain the essential economy of the nation. No doubt at times there were movements of troops and war materials which took precedence over all other traffic. Those occurrences necessarily were secretive to the general public and could not have been known by the shipper. The fallacy of the pleas here is in the failure to aver that this loss occurred by reason of and at a time when the movement of high priority items made it necessary to delay this shipment. Food was just as essential as other shipments. Another fatal defect in the pleas is the failure to aver that the shipper was afforded the choice of making the shipment under the hazardous conditions as stated by us in the F.E.C. Ry. Co. v. Peters, supra.

We find no merit in the assertion that the loss was occasioned by the quarantine. The carrier had absolute control of the tomatoes; it selected the route and contracted for

standard refrigeration with the knowledge of the facilities to re-ice, also of the quarantine regulations and existing traffic conditions. The pleas did not clearly bring the railroad within one of the stated exceptions. The judgment is affirmed.

CHAPMAN, C. J., TERRELL and BUFORD, JJ., concur.