MILLEDGE, STANLEY, Associate Judge.
This is an appeal from a judgment of the Civil Court of Record of Dade County, in the sum of $3,210, for the conversion of appellee’s goods, less $638.27 for transportation of the goods from Miami to Guantanamo Bay, Cuba. The case was tried without a jury.
Compañía Cubana de Aviación, S. A., an air carrier, on January 23, 1958, contracted with the shipper, Comfort-Craft, to transport 82 cartons of aluminum furniture from Miami to the Naval Supply Officer at Guantanamo Bay for $534.12. The main contention of Cubana is that the proper construction of the air waybill, the contract of carriage, is that while credit to the shipper for the transportation charges was extended, it was credit only until billed; therefore, the carrier had a lien on the goods for its charges and also for its costs in storing the goods in customs in Havana for over two months, which, it contends, was through no fault of the carrier.
The printed form of the waybill has a column dealing with charges to the consignee. Nothing was filled in as nothing was to be charged to the consignee. Another column dealt with the situation where the shipper prepays the freight or the goods are shipped on the credit of the shipper. The column is headed “Prepaid.” Underneath and parallel are the words “Cash” and “Credit” with printed instructions to cross out one. The word “Cash” was stricken. This, the carrier contends, means that the goods were shipped on credit, but the credit extended only until the shipper was billed, and it did not constitute a' waiver of the carrier’s lien for all of its proper charges. The best that can be said for the carrier’s construction of the contract is that it was supported by some non-expert opinion testimony. The plain meaning of the word “Credit” when unqualified, and the context of the transaction support the conclusion that the trial judge must have reached, namely, that the carrier undertook to transport the goods for a definite sum on the credit of the shipper, and that in so doing, the carrier waived the lien it would otherwise have had relying upon the credit of the shipper. Obligation to pay arose only after compliance with the carrier’s promise to deliver to consignee. Only then have the freight charges been earned. 9 Am.Jur., Carriers, § 619. The appellant doesn’t dispute the proposition of law; it disputes the construction of the contract, without which the rule is inapplicable.
The carrier claims that the long delay while the goods were stored in Havana awaiting transshipment by truck was not its fault. The carrier’s Havana manager said that he had trouble with the United States Embassy and with Cuban customs officials. He also claimed the impossibility of obtaining a trucking company to haul the goods to the Naval Station. There was some uncorroborated testimony to this effect, but its general weakness, unexplained discrepancies and improbabilities, together with the admittedly great concern of the Havana agent to avoid trouble with the Battista government so that the performance of his duties as a carrier seemed of little moment, all combined to afford ample basis for the trial judge’s implicit finding that the carrier’s excuses were unjustified, or perhaps were the imaginations of a frightened man. His inability to inform the shipper immediately that the goods were being detained in Havana, and to state the cause, is a matter that the trial judge was entitled to reject. On February 5, 1958, Cubana sent Comfort-Craft a written notice that the shipment remained undelivered at “destination,” for the reason that “we have requested franchise from U. S. Embassy in Havana.” He did not then contend that the “franchise” had been refused or any other significant facts such as the real reason for the delay; not even the name of the Embassy officer with whom he was dealing. Even more vague was the supposed difficulty with Cuban customs. The goods were finally shipped by truck to the Naval Station *50 after a stiff letter, dated April 8, 1958, from Comfort-Craft. Precisely what existed then to make this possible, which had not existed before, was not stated. The duty of the carrier demanded something better than a vague reference to “conditions.” When, finally, the goods were forwarded to Guantanamo Bay by truck, the carrier’s instructions were to deliver to consignee only if all transportation and storage charges were first paid. Since the carrier has never contended that the goods were accepted under a contract calling for payment by consignee, this last act is not referable to the present contention. The shipper had already said in no uncertain terms that it did not propose to pay for the freight until the goods were delivered and the carrier admits that transportation was on the credit of the shipper. If referable to anything in reason, the April shipment by truck is a belated acknowledgment of a duty to deliver as agreed. Having tried unsuccessfully to get the shipper to pay the freight and the storage caused by its own negligence, the carrier now tried to get the consignee to pay as a condition to delivery. The Havana agent knew that the consignee would not pay as the Naval Supply Officer had already said this by telephone, as shown by the carrier’s letter of March 31, 1958, to the shipper.
The shipper could have sued for damages. Section 352.26, Fla.Stat., F.S.A., imposes a duty on the carrier to deliver the freight received by it according to the terms of the contract as made at the initial point, and gives the damaged party a cause of action against the carrier. This statute was applied in Florida East Coast R. Co. v. Peters, 72 Fla. 311, 73 So. 151. By a telegram of April 18, 1958, the shipper informed the carrier that unless the carrier, within 72 hours, delivered the goods to the consignee or returned them to the shipper, freed of charges, the shipper would send the consignee a duplicate shipment by other means of transportation. In short, the shipper would treat the goods as converted by the carrier to its own use. An action at law for conversion was filed June 23, 1958. It is not disputed that a carrier’s refusal, without lawful excuse, to deliver the goods is sufficient to render a carrier liable for conversion. 9 Am.Jur., Carriers, § 580. The facts which warrant the application of the rule were in dispute. The judgment properly allowed the carrier as a set-off the amount of the freight charges, but he disallowed the storage charges.
There was ample evidence to support the judgment, and it is affirmed.
HORTON, C. J., concurs.
PEARSON, J., concurs in the judgment.